Judge Collett
delivered the opinion of the court:
The objection to the deposition of the defendant, Bakewell, we think, is well taken. It is true that Bakewell states, in his deposition, that he is not interested; but he transacted almost the whole business. Johnson was known in the transaction, to Page, as Bakewell’s agent only. Bakewell made the contract, advanced the money, received the flour, submitted the controversy to the arbitrators, and managed it before them in his own name. The award was, that the money be paid to him. Johnson was not interested when the contract was made. Bakewell is not a mere formal party, he is not a mere trustee; but he is charged with fraud in every important transaction leading to the result that the bill prays against. Against him, relief is prayed ; and he might, in this suit, be subjected to the costs of this suit, the suit at law, and of the arbitration. To prevent plaintiffs at law from fraudulently making the defendant’s witnesses parties to the suit, when no evidence on the trial is given against a defendant, a verdict may be taken for him, and he may then be sworn as a witness for his co-defendant; for the same reason a defendant in chancery, improperly so made, may be examined for his co-defendant, and so may one who is a mere trustee or formal defendant. 2 Stark Ev. 766 ; 2 Madd. Ch. 145. But when he is the all-important defendant, charged with actual fraud and misconduct throughout the whole transaction, and, if he is not interested, has reaped the whole fruits of his misconduct, and may still be liable for more than the costs of the suit, he can not testify for his co-defendant. 3 Johns. Ch. 612.
The view which we take of this case renders it necessary to decide whether a party can have relief against an award, after a judgment has been obtained against him thereon at law. *Persons have a right to settle their own controversies on any terms *114 they please ; and it is their duty to settle them, if they can do so, without too great a sacrifice. They have a right to refer their controversies to arbitration, on such terms' as they can agree upon. By a reference such as is made in this case, the arbitrators are authorized by the parties finally to settle their controversy; and they are necessarily authorized to determine on all the incidental questions, whether of law or fact, that may arise in the investigation of the case. They aré constituted by the parties, chancellors, judges, and jurors for the determination of the controversy. Whenever a court is given jurisdiction of a cause, with it is impliedly given the right to do all things, and to decide all questions, necessary to the right and just determination of that cause.
Arbitrators are generally chosen because of their character for integrity and practical knowledge of the business out of which the controversy arises. They accept the appointment, not for gain, but to reconcile their contending acquaintances with each other; to prevent a protracted, vexatious, and expensive litigation. The proceedings of such judges, so constituted by the parties accepting the appointment, as they generally do, from motives of kindness, useful as they are, by speedily, cheaply, and, in general, rightly determining the controversy, ought to be favorably viewed by the courts, and should not be disturbed, unless it is made clearly to appear that they have not regarded the principles of natural justice in hearing the partios, or giving them an opportunity of being heard; or that they were partial, or corrupt, or were imposed on by fraud; or that they have made a plain mistake in carrying- out the principles they had settled. 2 Johns. Ch. 361-367; 17 Johns. 416; 2 Pet. Cond. 461-466; Davy’s Ex’r r. Fowe, and note, Kyd, 330, 331; 1 Dallas, 161, 162; 2 Bibb, 456-459.
At the first meeting- of the arbitrators, the parties appeared before them.. The account kept by Page, Ormsby’s agent, of money received of and flour delivered to Bakewell, was produced and admitted; from which it appeared that Bakewell advanced to Page three thousand nine hundred and nine dollars and forty-four cents more than he had received flour for. This sum, with interest, Ormsby wished- to return to Bakewell. Bakewell was not willing to receive it, and insisted on having the value of the flour which had been produced, had this sum been vested in wheat, and the wheat manufactured ^according to the contract. This was the only difference between them. They produced no wit *115 nesses; each urged his pretensions on the arbitrators. Ormsby relied upon the wheat crop being injured by the weevil, and the refusal of Johnson to advance money; Bakewell relied on the contract. After the parties had been heard, the arbitrators adjourned over to another evening, to agree upon the principles on which they would award. They believed they had got the whole case. Bakewell so understood it. He never afterward had any notice of the meetings of the arbitrators, nor was he before them. So he states in his answer. One of the arbitrators gave Ormsby notice that they would not meet at the time appointed for their second meeting. He received no notice of any subsequent meeting.
After the parties have been heard fully, and the arbitrators have the case, it is no objection to the proceedings of the arbitrators that the parties have not notice, or do not attend their meetings, for the purpose of consulting with each other. The presence of the parties, at the consultation, would not usually be desirable or expedient. Where there is but one arbitrator, after he has heard the parties and got the case, if he has doubts, or calculations to make, he will take time, make up his opinion, either at home or abroad, and make his calculations and his award, whenever it best suits his own convenience; but where there are several arbitrators, they would come together to converse, consult, and calculate.
In the present case, after the arbitrators had settled the principles on which they would award, some of them heard that Ormsby wished' his witnesses examined. They did not hear them, because they thought it would not vary their award. They must have known what he wished to prove, from having heard his statements and remarks when the case was submitted. The weevil in the wheat, the suspension of purchase, while the wheat was receiving injury in the mill, they had taken as facts, and had come to the conclusion set forth in the award. Hartshorn says, that he thought the suspension mutually beneficial. When Ormsby submitted his case to the arbitrators on the mutual statements of the parties, it does not appear that there was the least disagreement as to facts. He gave them the right to decide without further hearing. When he afterward changed his mind, he should have gone to the arbitrators, and insisted on having his *witnesses heard. Had they then refused, the testimony being relevant, I know not but that their reward would be relieved against. *116 But here is no offer and rejection. He changed his mind, but never came to the arbitrators and told them so. He had the benefit of the testimony, for the arbitrators took his statements as facts,. If it had been intended that the parties should again be before the arbitrators, why was not Bakewell notified ? Arbitrators, as well as other judges, should be circumspect, and do or say nothing that would lead to a suspicion of their honesty or impartiality. It would have been better, in the present case, had Hartshorn not drawn the submission bond, and had the arbitrators hunted up Ormsby, notified Bakewell, and heard Ormsby’s witnesses. It would have been more satisfactory to him. But we see nothing in these things which would justify us in setting aside this award. As to the value of the flour, the case went to the arbitrators without any evidence or agreement as to this; flour was high, and fluctuating in price from day to day; at what price it should be fixed depended on the time or times the arbitrators determined it should have been delivered. The arbitrators were all dealers in flour in Cincinnati, and this was probably the reason that this part of the case was left in the situation it was. What could they do, but fix it from their own knowledge, and, if they thought proper, by an examination of the books of dealers in flour at the time? It is often the case that, from the want of evidence as to value, juries have to determine it from their own knowledge. Arbitrators and judges state their cases to friends in whose judgment and integrity they have confidence, that they may aid them in coming to a more satisfactory conclusion. 2 Johns. 353; Kyd, 95 ; 1 Dall. 161, 162.
This is a very hard case on Ormsby. The award is much higher than the sum Bakewell agreed to take. The arbitrators may have erred in determining that Ormsby should pay the value of flour, and not return the money advanced, with interest; they may have erred in fixing the times at which the flour should have been delivered, and in the value of flour at those times; but these were the matters submitted to them for determination. We see a want of circumspection, but not a want of integrity, or a departure from those rules which natural justice required should be observed in hearing and determining the case. 2 Johns. Ch. 358, 361-363; Kyd, 330.
The bill must therefore be dismissed.