**BUYER'S FIRST REALTY, INC., Appellant,**

**v.**

**CLEVELAND AREA BOARD OF REALTORS et al., Appellees.**

[Cite as *Buyer's First Realty, Inc. v. Cleveland Area Bd. of Realtors* (2000), 139 Ohio App.3d 772.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 75804 and 75805.

Decided Aug. 14, 2000.

*Louis A. Turi,* for appellant.

*Matthew B. Kall; Baker & Hostetler, LLP,* and *John H. Burtich,* for appellees.

*Jon F. Deegan* and *Terrence J. Burke,* for Realty One, Inc.

ANNE L. KILBANE, Judge.

This is a consolidated appeal from an order of Judge Daniel O. Corrigan. Plaintiff-appellant Buyer's First Realty, Inc. ("Buyer's First") claims that the judge erred when he granted two motions for summary judgment and confirmed the two arbitration awards against it in favor of appellee Realty One, Inc. It alleges that appellee Cleveland Area Board of Realtors ("CABOR") lacked the authority to impose arbitration on its dispute with Realty One and agents, appellees Laura Rigney and Marilyn Lupi ("Realty One"), because the funds in dispute did not result from a real estate agent's commission. We disagree and affirm the order confirming the arbitration awards in favor of Realty One.

From the record we glean the following: Both Buyer's First and Realty One are members of CABOR, whose purpose is, in part, "[t]o promote and maintain high standards of conduct in the real estate profession as expressed in the Code of Ethics of the National Association of REALTORS®."[1] Members are required,

---

1.  Joint Answer of Defendants Realty One, Inc. and Marilyn Lupi and Counterclaim (Application) of Defendant Realty One, Inc. for an order Confirming Arbitration Award, Appendix A, at 1 (copy of Bylaws, Section 2, Article 2).

pursuant to CABOR bylaws, to arbitrate disputes between each other in accordance with the Code of Ethics and Arbitration Manual of the National Association of REALTORS® and R.C. 2711.01 *et seq.* (*Id.,* Bylaws, Sections 1 and 2, Article 7). Through CABOR, Realty One requested arbitration with Buyer's First on disputes regarding the commissions on two separate real estate transactions. The arbitrators found in favor of Realty One on both disputes, and Buyer's First filed the following complaints.

On August 28, 1997, Buyer's First filed its first complaint in Cuyahoga County Common Pleas Court case No. 339578 against Realty One, Rigney and CABOR, alleging that it acted as the agent for Trevor and Rhonda Collis, who had purchased the home of Robert and Dianna Gronski. It claimed that, according to the Purchase Agreement attached to the complaint, both the Collises and the Gronskis had agreed that Buyer's First should receive a brokerage fee of 3.5 percent of the $117,000 purchase price for services rendered to the Collises. Buyer's First further alleged that Realty One was entitled to a commission from the Gronskis on the sale of the property. It further claimed that on April 17, 1997, after a CABOR arbitration hearing, the arbitrators awarded Realty One the full $3,925 that Buyer's First had received upon the closing of the Collis/Gronski sale, which award the CABOR Board of Directors confirmed on August 14, 1997. Buyer's First did not attach to the complaint copies of the CABOR rules that provide for arbitration of disputes, the arbitration agreement, the arbitration award, or the award confirmation as required by R.C. 2711.14.

On December 29, 1997, Buyer's First filed a second complaint in Cuyahoga County Common Pleas Court, case No. 346010, against Realty One, Lupi, and CABOR, alleging that it had acted as an agent for Martino Rossi and Lisa Aveton in the purchase of a home from Richard A. Favazzo and/or John Kobal. It further alleged that the buyers and sellers agreed in writing to pay Buyer's First $3,443.75 as a brokerage fee from the $105,750 purchase price and that on December 8, 1997, the CABOR hearing panel awarded Realty One the $3,443.75 paid to Buyer's First. Again, Buyer's First did not attach to the complaint a copy of the purchase agreement or either the CABOR rules or the arbitration agreement. It did, however, attach a copy of the arbitration award.

In both complaints, Buyer's First alleged in its first cause of action that the award was "outside its [CABOR's] scope of authority in that no rule in the By-Laws or other regulations of CABOR authorized the making of an award of funds which were paid to Buyer's First as a result [of] and as consideration for its service and which was not in the nature of a real estate agent's commission." It further contended, "[T]he award was entirely *ultra vires* and manifestly mistaken in that by the rules of CABOR, the arbitration must be the subject of a contract between the complainant and the respondent. No such contract existed." Buy-

er's First also claimed that Realty One and Rigney were "guilty of laches" because of their negligence "in failing to raise their claim for said commission prior to and during the time the sales contract was finalized." Finally, Buyer's First requested that the judge "reverse" the arbitration award and grant judgment in its favor because Realty One would be "unjustly enriched."

In its answers, CABOR asserted, *inter alia*, that it was an improper party to the suit. Realty One denied the various allegations in its answers, asserted in its counterclaims for entry of judgment in its favor on the arbitration awards, and attached all documentation required under R.C. 2711.14.

On March 27, 1998, the judge granted the defendants' joint motion to consolidate both actions upon his docket. On September 18, 1998, CABOR filed its motion for summary judgment, arguing that Buyer's First asserted no facts to support a cause of action against it and that it was completely immune from liability for its act of handling the arbitration. Later, on October 4, 1998, Realty One, Rigney, and Lupi filed a motion for summary judgment on both Buyer's First's claims and Realty One's counterclaims. Realty One argued that the remedy sought by Buyer's First—a "reversal" of the arbitration award after a *de novo* review—was not allowed under R.C. Chapter 2711. Moreover, it argued, Buyer's First could not show any specific grounds under the statute that would authorize the judge to vacate the arbitration award. Realty One then asked the judge to grant summary judgment in its favor on its counterclaims and confirm the two arbitration awards because Buyer's First failed to show grounds for the vacation or modification of the award.

In response to both motions for summary judgment, Buyer's First asserted that the CABOR arbitrators acted outside their authority, arguing that they had authority to consider only the division of commissions where there is an agreement between its members to share commissions. Buyer's First attached as exhibit "C" a document titled "Appendix I to Part Ten, Arbitrable Issues." It also attached an affidavit of James L. Restina, an officer of Buyer's First and a member of its board of directors, and copies of both the Collis and the Rossi/Averton Purchase Agreements.

In his affidavit, Restina claimed that Realty One sought "to obtain funds from Plaintiff which were earned by Plaintiff pursuant to contracts between other parties, and of which contracts Plaintiff, was a third-party beneficiary." He asserted that neither the by-laws, rules of governance, rules of arbitration, nor membership conditions authorize CABOR arbitrators to award damages or other compensation to a member "claiming funds earned by and paid to another member via a specific contract for services rendered." He also claimed that the sellers may have had separate contracts obligating them to pay Realty One

commissions greater than those called for under the Buyer's First purchase agreements and which were, in fact, paid to Realty One by the sellers.

On December 8, 1998, the judge entered the following order:

"[Defendant], Cleveland Area Board of Realtors' motion for summary judgment is granted. Motion of [Defendants], Realty One Inc., Laura Rigney, and Marilyn Lupi for summary judgment on [Plaintiff's] complaints is hereby granted. Motion for summary judgment on the counterclaims of Realty One is granted. Pursuant to R.C. 2711.09, the Court hereby confirms the two arbitration awards. FINAL."

It is from this journal entry Buyer's First appealed.

■ It is clear that the order confirms the arbitration award but *does not* enter judgment on the award and, therefore, we are required to consider whether the order is final and appealable before addressing the merits of the Buyer's First appeal. We look to the following to answer that question: the rules announced in *Stewart v. Midwestern Indem. Co* (1989), 45 Ohio St.3d 124, 543 N.E.2d 1200, as reaffirmed on July 29, 1998 in *Cleveland Police Patrolmen's Assn. v. Cleveland* (1998), 82 Ohio St.3d 393, 696 N.E.2d 571; (2) the amended final order statute, R.C. 2505.02 (eff. July 21, 1998); (3) the Arbitration Act, R.C. 2711.01, *et seq.*; and (4) the origins of statutory arbitration.

While arbitration was recognized at common law, a judge would "not force the specific performance of an agreement to refer any matter in controversy between adverse parties to arbitrators. Nor [would] they compel arbitrators to make an award * * *. The reason given for this rule is that [the courts] will not aid parties in ousting, by their agreements, the jurisdiction of the ordinary tribunals of the country, established for the trial of causes." *Conner v. Drake* (1853), 1 Ohio St. 166, 168–169, 1853 WL 12; see *Guider v. LCI Communications Holdings Co.* (1993), 87 Ohio App.3d 412, 417, 622 N.E.2d 415, 418–419. In addition, a party engaged in common-law arbitration had the right to revoke an agreement to submit to arbitration at any time prior to the announcement of the award. *Shafer v. Metro–Goldwyn–Mayer Distrib. Corp.* (1929), 36 Ohio App. 31, 42, 172 N.E. 689, 693; *Carey v. Commissioners of Montgomery Cty.* (1850), 19 Ohio 245, 247, 1850 WL 83.[2]

In contrast to common-law arbitration, courts construing the early examples of statutory arbitration recognized that "it is capable of becoming extensively useful in its operation" as "[i]t settles controversies speedily * * *," *Carey*, 19 Ohio at

---

**2.** "In England, from the time of Lord Coke until the statute for the amendment of the law 3 and 4 William IV, ch. 42, the language of the courts, repeated in all the treatises on arbitration was, that an agreement to submit to arbitration was executory, and revocable, until executed by an award." See, also, *id.* at 247–252, for a discussion of English common-law arbitration.

280 (construing 3 Curwen's Revised Statutes (1854), Chapter 1355, passed February 17, 1831, 29 Ohio Laws 264),[3] and "cheaply," *Ormsby's Admrs. v. Bakewell* (1835), 7 Ohio 98, 114, 1835 WL 10. Recognizing the need to consider statutory arbitration awards as conclusive to the parties' rights,[4] the Supreme Court in *Carey v. Commrs. of Montgomery Cty.* concluded that parties to statutory arbitration "have no right to revoke the submission after the arbitrators are sworn." *Id.* at syllabus. It noted that "[w]hen the legislature enacted this law upon the subject of arbitrations, gave powers so ample, and at the same time guarded them so carefully, they never could have meant to allow an interference like this right of revocation." *Id.* at 281.

Over one hundred years after *Carey*, the Supreme Court succinctly held that "the law favors arbitration." *Brennan v. Brennan* (1955), 164 Ohio St. 29, 57 O.O. 71, 128 N.E.2d 89, paragraph one of the syllabus. A review of the current Arbitration Act, R.C. 2711.01 *et seq.*, reflects both the public policy favoring arbitration and the General Assembly's continued interest in providing an efficient, expedited, and economical remedy to resolve disputes, with the "additional advantage of unburdening crowded court dockets." *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 83, 22 OBR 95, 98, 488 N.E.2d 872, 875.

■ To this end, the General Assembly has limited the role of judicial review by delineating the circumstances under which a judge may vacate (R.C. 2711.10) or modify (R.C. 2711.11) an arbitration award. *Lake Cty. Bd. of Mental Retardation & Dev. Disabilities v. Professional Assn. for Teaching of Mentally Retarded* (1994), 71 Ohio St.3d 15, 17–18, 641 N.E.2d 180, 181–182.[5] Even the

---

3. 3 Chase, Statutes of Ohio (1835) 1797; 3 Curwen 2409. Footnote 1, found at 3 Curwen 2409, indicates that this was the fifth rendition of various arbitration statutes, some utilized before statehood in 1803.

4. See *Thomas v. Molier* (1827), 3 Ohio 266, 267, 1827 WL 50 ("The object of arbitration is to put an end to litigation, by ascertaining the rights of the parties, and for this purpose, the award must be so explicit and descriptive, that the rights and duties of each party are no longer matters of doubt or dispute.").

5. Early renditions of the statute also reflected this limited review. See 3 Curwen, Chapter 1355, Section 11 (passed Feb. 17, 1831) 2411 (allowing the award to be set aside "if any legal defects appear in the award * * * or if it shall be made to appear, at the term of court to which said award and arbitration bond are entered in said court * * * that said award * * * was obtained by fraud, corruption or other undue means, or that said arbitrators * * * misbehaved, said court may set aside said award * * * or make such order thereon as may be just and right"); *Ormsby's Admrs.*, 7 Ohio at 114 ("The proceedings by the [arbitrators] * * * ought to be favorably viewed by the courts, and should not be disturbed unless it is made clearly to appear that they have not regarded the principles of natural justice in hearing the parties, or giving them an opportunity of being heard; or that they were partial, or corrupt, or

documents required to be filed when a party seeks an order confirming, modifying, correcting, or vacating an arbitration award are limited to only what is necessary for that limited review by the court of common pleas. R.C. 2711.14. The Act also encourages the parties to act quickly and either contest the award within three months after it is delivered, R.C. 2711.13, *Galion v. Am. Fed. of State, Cty. & Mun. Emp.* (1995), 71 Ohio St.3d 620, 646 N.E.2d 813, paragraph one of the syllabus, or apply for an order confirming the award within the one-year limitation period and obtain a judgment in the prosecuting party's favor, R.C. 2711.09.[6]

To further the purpose of the Arbitration Act, the General Assembly also provided for a two-step process in the ultimate entry of an arbitration award. After conducting a limited review under R.C. 2711.10 or R.C. 2711.11, the judge must first enter an order confirming, modifying, correcting, or vacating the award, and then he or she must enter judgment "in conformity therewith" as required by R.C. 2711.12. R.C. 2711.15 also reflects this two-step process, specifically allowing an appeal to "be taken from an order confirming, modifying, correcting, or vacating an award made in an arbitration proceeding or from judgment entered upon an award." It is clear that the General Assembly intended to allow a party in an arbitration award dispute the opportunity to appeal from *either* (1) the order confirming, modifying, correcting, or vacating an award, or (2) from judgment on that award. "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation." *Symmes Twp. Bd. of Trustees v. Smyth* (2000), 87 Ohio St.3d 549, 553, 721 N.E.2d 1057, 1061, citing *Meeks v. Papadopulos* (1980), 62 Ohio St.2d 187, 190, 16 O.O.3d 212, 213, 404 N.E.2d 159, 161, citing *Sears v. Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E.2d 413, paragraph five of the syllabus; see, also, *Muczyk v. Cleveland State Univ.* (1996), 111 Ohio App.3d 167, 169, 675 N.E.2d 1283, 1284–1285. Therefore, the mere absence of an order entering "judgment in conformity therewith" as required under R.C. 2711.12 does not affect the "appealability" of an order confirming, modifying, correcting, or vacating an award for purposes of R.C. 2711.15.

This conclusion, however, does not end the inquiry, since the Supreme Court has concluded that this section must be read in *pari materia* with R.C. 2505.02, the "final order" statute. In *Stewart v. Midwestern Indem. Co.* (1989), 45 Ohio St.3d 124, 543 N.E.2d 1200, syllabus, the Supreme Court held that "[a] trial court

---

were imposed on by fraud; or that they have made a plain mistake in carrying out the principles they had settled.").

**6.** See fn. 5.

order which vacates an arbitration award and orders the parties to select new arbitrators and to conduct a new arbitration proceeding is not a 'final appealable order' as defined in R.C. 2505.02." In the body of its opinion, without explaining its reasons, the court stated that R.C. 2711.15[7] (which provides for an appeal if an award is vacated) must be read in *pari materia* with R.C. 2505.02, noting that for an order to be considered "final," it must satisfy "three qualifications": (1) it must "affec[t] a substantial right"; (2) it must "determine the action"; and (3) it must "preven[t] a judgment." *Id.* at 126, 543 N.E.2d at 1202, citing *Bellaire City Schools Bd. of Edn. v. Paxton* (1979), 59 Ohio St.2d 65, 69–70, 13 O.O.3d 58, 60–61, 391 N.E.2d 1021, 1023–1025.[8] Because the judge not only vacated the award but also provided for a new arbitration proceeding, the court concluded that "the order cannot be considered a 'determin[ation of] the action' or one which 'prevents a judgment' within the meaning of R.C. 2505.02." (Bracketed changes *sic.*) *Id.* at 126, 543 N.E.2d at 1202.

The *Stewart* decision was reaffirmed without opinion in *Cleveland Police Patrolmen's Assn. v. Cleveland* (1998), 82 Ohio St.3d 393, 696 N.E.2d 571, based upon similar facts, the vacation of an arbitration award, and remand for a new hearing. The *Stewart* syllabus, arising from facts very different from those in the case *sub judice,* does not control our decision. S.Ct.R.Rep.Op. 1(B). However, because the decision in *Cleveland Police Patrolmen's Assn.* was announced six days after the effective date of the amended R.C. 2505.02, we believe it is appropriate to review the present order and decide whether it fulfills any of the definitions contained therein.

At the time the court decided *Stewart,* R.C. 2505.02 described three types of final orders:

"An order that affects a substantial right in an action which in effect determines the action and prevents a judgment, an order that affects a substantial right made in a special proceeding or upon a summary application in an action

---

7. As noted above, R.C. 2711.15 provides for an appeal when an award is vacated, confirmed, modified, or corrected.

8. *Bellaire,* 59 Ohio St.2d 65, 13 O.O.3d 58, 391 N.E.2d 1021 at syllabus, held that "an order of a trial court which stays all proceedings before it pursuant to R.C. 2711.02 and compels arbitration between the parties who have contracted to do so pursuant to R.C. 2711.03, is not a final appealable order pursuant to R.C. 2505.02 when it does not, in effect, determine the action and prevent a judgment." The General Assembly superseded this rule in 1990 when it amended R.C. 2711.02 to specifically provide that an order granting or denying a stay of trial pending arbitration "is a final order and may be reviewed, affirmed, modified, or reversed on appeal pursuant to the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505. of the Revised Code." Am. S.B. No. 177, 143 Ohio Laws, Part I, 964, eff. May 31, 1990. The court did not consider whether the order at issue was rendered in a "special proceeding."

after judgment, or an order that vacates or sets aside a judgment or grants a new trial is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial."

R.C. 2505.02 (effective July 22, 1998) now describes five types of final orders, preserving the original three:

"An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

"(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;

"(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;

"(3) An order that vacates or sets aside a judgment or grants a new trial;

"(4) An order that grants or denies a provisional remedy * * *.

"(5) An order that determines that an action may or may not be maintained as a class action."

■ A "special proceeding," as now defined by R.C. 2505.02(A)(2), is "an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." See, also, 51 Ohio Laws, 57, 161, Section 604, 3 Curwen's Revised Statutes, 2036–2037, Chapter 1202, Section 604 (passed Mar. 11, 1853) (specifically providing that Code of Civil Procedure shall not affect proceedings under statute relating to arbitration). After the adoption of the Code of Civil Procedure in 1853, the Supreme Court specifically held that " '[a]rbitration' is a 'special proceeding' " for purposes of that code. *Moore v. Boyer* (1884), 42 Ohio St. 312, 313, 1884 WL 243, referring to R.S. 5601–5613, 29 Ohio Laws 264.[9] Therefore, an order confirming an arbitration award is one rendered in a special proceeding as defined by R.C. 2505.02(A)(2).

After having determined that the present order under appeal was made in a "special proceeding," we now consider whether it "affects a substantial right." A "substantial right" as now defined by R.C. 2505.02(A)(1) "means a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect."[10] (Emphasis added.)

---

**9.** *Moore* had concluded that an order affirming the arbitrators' award was not appealable because it was not a "civil action" under R.S. 5226. This section was later repealed.

**10.** See, also, *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 88, 541 N.E.2d 64, 67 ("A court order which deprives a person of a remedy which he would otherwise possess deprives that person of a substantial right."); *Bell v. Mt. Sinai Med. Ctr.* (1993), 67 Ohio St.3d

Prior to this amendment, the courts applied the rule in *Noble v. Colwell* (1989), 44 Ohio St.3d 92, 540 N.E.2d 1381, which defined a substantial right as one which " 'involves the idea of a legal right; and that right is one which is enforced and protected by law.' " (Emphasis added.) *Id.* at 94, 540 N.E.2d at 1383, quoting *North v. Smith* (1906), 73 Ohio St. 247, 249, 76 N.E. 619, 619. In *North*, the Supreme Court held that "[t]he circuit court has jurisdiction to review on error an order of the court of common pleas, made on appeal from the probate court, removing a guardian for cause." *North*, 73 Ohio St. 247, 76 N.E. 619 at syllabus. The 1906 court noted that, prior to then recent amendments to the Revised Statutes affecting appellate jurisdiction, such an order "was not reviewable" because "[t]here was then no legislation authorizing an appeal and because such an order was not a final order affecting a substantial right * * *." *Id.* at 248, 76 N.E. at 619. It concluded that, after the legislature made the applicable statutory amendments to provide for such appeal, "it is no longer a pertinent question whether such an order is a final order affecting substantial rights; for it is conceded that the right to proscribe in what cases there may be review by error or appeal is wholly with the legislative power and is not the subject of judicial discretion." *Id.* at 248, 76 N.E. at 619.

"[T]hat it affects substantial rights, if that must be deemed of any importance, must be apparent from the very fact that, in the judgment of the legislature, the rights affected by such order are of sufficient importance to be protected by allowing a review either by appeal or in error." *Id.* at 249, 76 N.E. at 619.

Applying *North* to the present matter, the fact that the General Assembly has granted the right of appellate review to either orders confirming, modifying, correcting, or vacating an award, or from judgment on that award establishes that it has predetermined that the right involved is a substantial one. Therefore, this order confirming the arbitrators' award satisfies the definition of final order contained in subdivision (B)(2) of R.C. 2505.02.

■ Our *in pari materia* review, as required by *Stewart*, is in keeping with the definition of "substantial right" adopted by the General Assembly in 1998. It also furthers the purpose of the Arbitration Act by allowing the aggrieved party to quickly appeal without having to wait for the common pleas judge to enter judgment against the aggrieved party and in the triumphant party's favor. Therefore, whether we apply the mandates of R.C. 2711.15 as it stands alone, or

---

60, 63, 616 N.E.2d 181, 184 (an order affects a substantial right when, "in the absence of an immediate appeal, it forecloses appropriate relief in the future"); *Kelm v. Kelm* (1994), 93 Ohio App.3d 686, 691, 639 N.E.2d 842, 845; citing *Widder & Widder v. Kutnick* (1996), 113 Ohio App.3d 616, 621, 681 N.E.2d 977, 979–980.

the *in pari materia* rule espoused in *Stewart*, an order confirming an arbitration award is a final order subject to this court's review under R.C. 2505.03.

■ Turning now to the merits of this appeal, we first address Buyer's First's second assignment of error:

"II. The trial court erred in granting summary judgment for appellees where the rules governing the arbitration specifically provided for judicial review of the arbitration procedure."

Buyer's First argues that R.C. 2711.10 does not preclude judicial review of the arbitration awards. Moreover, it argues, the CABOR Code of Ethics, Arbitration Rules, Part Ten, specifically makes reference to a member's "legal challenge" to the validity of the award and because arbitration rules do not limit a judge's jurisdiction, a review of an arbitration award is *de novo*. Both CABOR and Realty One counter that the judicial review is not *de novo* but statutorily limited to the factors set forth in R.C. 2711.10.

■ "R.C. 2711.10 limits judicial review of arbitration to claims of fraud, corruption, misconduct, an imperfect award, or that the arbitrator exceeded his authority." *Goodyear Tire & Rubber Co. v. Local Union No. 200, United Rubber, Cork, Linoleum & Plastic Workers of Am.* (1975), 42 Ohio St.2d 516, 71 O.O.2d 509, 330 N.E.2d 703, paragraph two of the syllabus. "Given the presumed validity of an arbitrator's award, a reviewing court's inquiry into whether the arbitrator exceeded his authority, within the meaning of R.C. 2711.10(D), is limited." *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.* (1990), 49 Ohio St.3d 129, 551 N.E.2d 186, paragraph one of the syllabus. As such, a review of an arbitration award pursuant to R.C. 2711.10(D) is not a *de novo* review of the merits of the dispute. See *Roper v. Town & Country Inv. Fund II* (Oct. 8, 1998), Cuyahoga App. 73374, unreported, 1998 WL 703346 (reviewing court does not consider or determine whether arbitrator's decision was legally or factually erroneous). Rather, the review is limited to the question whether the arbitration award "draws its essence from the * * * agreement and is not unlawful, arbitrary or capricious." *Findlay City School Dist. Bd. of Edn.*, *supra*, paragraph two of the syllabus. Once the reviewing court determines that the award is drawn from the essence of the agreement and is not unlawful, arbitrary, or capricious, the "inquiry for purposes of vacating an arbitrator's award pursuant to R.C. 2711.10(D) is at an end." *Id.*

In the instant case, it is clear that the judge's review was limited to the question of whether the arbitration awards were drawn from the essence or terms of the rules of arbitration between members as adopted by CABOR and the arbitration agreement as assented to by Buyer's First upon its membership

in the organization and upon its agreement to arbitrate both the Collis and Rossi/Averton disputes. This assignment of error is without merit.

We next consider the application of this standard in the context of Buyer's First's first and third assignments of error:

"I. The trial court erred in granting summary judgment for appellees where the pleadings and exhibits submitted demonstrated genuine issues of fact in dispute relating to the extent of the authority of arbitrators in the subject matter under arbitration as provided in the rules of the organization."

"III. [The] trial court erred in granting appellees' motion for summary judgment where exhibits submitted pursuant to the motion clearly showed the award made by the arbitrators to be exceeding their authority."

Buyer's First argues that the purchase agreements entered into by both the buyers and sellers in the two transactions were not subject to arbitration pursuant to the CABOR code of ethics and rules of arbitration. Buyer's First denies any agreement with Realty One regarding these transactions and contends that the arbitration award giving the brokerage fee to Realty One fell outside the scope of authority granted to the arbitrators and should be reversed.

Realty One challenges this assertion, arguing that Buyer's First failed to state a claim upon which relief can be granted because R.C. 2711.10 does not authorize the "reversal" of an arbitration award. Both CABOR and Realty One submit that Buyer's First failed to fulfill its burden of showing that the arbitrators exceeded their authority; rather, the rules adopted by CABOR verify that the arbitrators did not exceed their authority based upon the absence of qualifying language limiting their powers solely to *contractual* disputes. Additionally, CABOR contends that it is immune from suit for its role as arbitrator in the Collis and Rossi/Averton commission disputes.

This court reviews the grant of summary judgment *de novo*, applying the same standard as that applied by the trial judge. *Druso v. Bank One of Columbus* (1997), 124 Ohio App.3d 125, 131, 705 N.E.2d 717, 720–721. A judge may grant a motion for summary judgment pursuant to Civ.R. 56(C) when the following elements are satisfied:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274; accord *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 203–204.

The foundation of these assignments of error rests solely upon the premise that Buyer's First and Realty One did not have a contract or agreement regarding the division of a commission associated with each property. According to Buyer's First, under the CABOR rules of arbitration, the lack of agreement between them precludes the arbitrators from considering such a dispute.

As we indicated earlier, Buyer's First failed to provide the arbitration agreement or material outlining the authority of the arbitrators with its complaint and request to "reverse" the arbitration awards. Applying a strict construction of the Arbitration Act, this defect would ordinarily require the judge to deny a request to confirm, vacate, modify, or correct an arbitration award. Cf. *Cleveland Police Patrolmen's Assn. v. Cleveland* (1994), 99 Ohio App.3d 63, 69, 649 N.E.2d 1291, 1294 ("without the pertinent documents the trial court could not determine that the award drew its essence from the agreement and should have affirmed the award"). However, Realty One and CABOR do not deny the existence or amount of the awards, and information regarding the power of the arbitrators to consider certain disputes was appended to Buyer's First's brief opposing the motions for summary judgment. This information, a copy of a document titled "Appendix I to Part Ten, Arbitrable Issues," from the Code of Ethics and Arbitration Manual, pages 115 to 116, provides:

"In the event of contractual disputes or specific non-contractual disputes as defined by Standard of Practice 17–4 between REALTORS® associated with different firms, arising out of their relationship as REALTORS®, the REALTORS® shall submit the dispute to arbitration in accordance with the regulations of their Board or Boards rather than litigate the matter. [Citing Article 17 of the Code of Ethics; emphasis omitted.]

" * * *

"As used in Article 17 of the Code of Ethics and in Part Ten of this Manual, the terms 'dispute' and 'arbitrable matter' refer to contractual issues and questions, and certain specific non-contractual issues and questions outlined in Standard of Practice 17–4, including entitlement to commissions and compensation in cooperative transactions, that arise out of the business relationships between REALTORS®, and between REALTORS® and their clients and customers * * *."

This document continues, noting that "[m]any arbitrations conducted by Boards of REALTORS® involve entitlement to compensation offered by listing brokers through a multiple listing service or otherwise to cooperating brokers acting as subagents, [or] as agents of purchasers * * *." Buyer's First did not include with its brief or otherwise in the record, the language of Standard of Practice 17–4, referred to in "Appendix I to Part Ten," which purportedly outlines the "specific non-contractual disputes" subject to arbitration.

■ To the extent the rules governing CABOR and its members were disclosed, such rules contradict Buyer's First's contention. These rules apparently allow CABOR members to arbitrate disputes regarding their claims against each other for a portion or a whole of a real estate commission, regardless of whether the commission relates to an express commission-sharing agreement. Viewing the facts in a light most favorable to Buyer's First, we find no issue of material fact about the arbitrators' exceeding their authority to be in dispute. *Temple*, 50 Ohio St.2d at 327, 4 O.O.3d at 471–472, 364 N.E.2d at 273–274. Reasonable minds could only conclude that the arbitration awards were in conformity with both the "essence" of the rules governing CABOR and the arbitration agreement. *Findlay City School Dist. Bd. of Edn.*, *supra*, paragraph two of the syllabus. As a result, there is no error in finding that Buyer's First failed to present a genuine issue of material fact that would entitle it to relief under R.C. 2711.10(D) and in confirming the award on Realty One's counterclaims in accordance with R.C. 2711.09.

■ Additionally, CABOR is correct in its contention that it is immune from suit for its role in arbitrating the two commission disputes:

■ "The ability to secure such able persons as arbitrators is essential if such system is to continue as a valuable tool of the judicial system in facing and coping with overcrowded dockets. It is, therefore, necessary and within the doctrines of quasi-judicial immunity, that arbitrators be immune from suits for acts performed within their capacity as arbitrators and performed within their assigned duties and authority." *Wolfe v. Columbia Gas Transm. Co.* (Mar. 30, 1982), Knox App. 81–CA–19, unreported, 1982 WL 5431. See, also, *Barbara v. New York Stock Exchange, Inc.* (C.A.2, 1996), 99 F.3d 49, 58–59 (where the plaintiff sought to recover money damages for alleged abuses in the conduct of the defendant's disciplinary proceedings, court applied the doctrine of absolute immunity to preclude assertion of such claims).

There was no error in granting summary judgment in CABOR's favor, since the only claim and factual allegations asserted by Buyer's First was solely to CABOR's role as arbitrator. The first and third assignments of error are overruled.

Buyer's First argues in its fourth assignment of error:

"IV. The trial court erred in granting appellees' motions for summary judgment when the pleadings, affidavit [*sic*] clearly raised the question and issue of a tortious interference by the arbitrators with appellant's contractual rights."

Buyer's First argues that "having as much as raised that question [of tortious interference with a contract] in the complaint, while perhaps not in those words, but by allegations tantamount thereto, a genuine issue of fact was raised,

defeating the ground for issuance of summary judgment." Both CABOR and Realty One assert that Buyer's First neither alleged such a cause of action nor presented any facts to support such a claim.

"The elements of the tort of tortious interference with contract are (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages." *Fred Siegel Co., L.P.A. v. Arter & Hadden* (1999), 85 Ohio St.3d 171, 707 N.E.2d 853, paragraph one of the syllabus.

Because Buyer's First failed to argue below that the "facts" support a claim for tortious interference with a contract against CABOR, we need not address the question here. "It is fundamental that a reviewing court need not consider any issues that could have been raised in the trial court, but were not." *Thomas Steel, Inc. v. Wilson Bennett, Inc.* (1998), 127 Ohio App.3d 96, 105, 711 N.E.2d 1029, 1036, appeal not allowed (1998), 82 Ohio St.3d 1452, 695 N.E.2d 1149. Moreover, the complaint does not contain averments that would give reasonable notice of such a claim. We find Buyer's First waived this issue for appellate review. This assignment of error is overruled.

*Judgment affirmed.*

TIMOTHY E. MCMONAGLE, P.J., and JOHN T. PATTON, J., concur.