[Cite as *Parma v. Parma Fire Fighters Assn. Local 639*, 2012-Ohio-932.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97342**

# CITY OF PARMA

### PLAINTIFF-APPELLANT

vs.

# PARMA FIRE FIGHTERS ASSN. LOCAL 639

### DEFENDANT-APPELLEE

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-749123

**BEFORE:** Jones, J., Boyle, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** March 8, 2012

**ATTORNEYS FOR APPELLANT**

William F. Schmitz
Gary C. Johnson
Johnson, Miller & Schmitz, LLP
635 W. Lakeside Avenue
Suite 600
Cleveland, Ohio 44113


**ATTORNEY FOR APPELLEE**

Ryan J. Lemmerbrock
Muskovitz & Lemmerbrock, LLC
820 W. Superior Avenue, 8th Floor
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Plaintiff-appellant, the city of Parma, appeals from the trial court's judgment confirming and enforcing the arbitration award. We affirm.

I. Facts and Procedural History

{¶2} Parma and defendant-appellee, Parma Fire Fighters Association Local 639 ("union"), are parties to a collective bargaining agreement ("CBA" or "agreement"). Under the agreement, disputes between the city and union concerning the application or interpretation of the CBA must be resolved through the agreement's grievance-arbitration procedure.

{¶3} Anthony DeCarlo had been a Parma fire fighter for 15 years. On December 8, 2009, he was terminated from his position because he had tested positive for cocaine and the city found he was deceptive in regard to his use. On December 10, the union filed a grievance under the CBA's procedure contesting that there was just cause for the termination. The city denied the grievance and the union requested that the matter be arbitrated. The parties mutually agreed on the arbitrator.

{¶4} The arbitration hearing was held on August 20, 2010. The parties agreed to the issue for the arbitrator's determination: "Was the City's discharge of the grievant for just cause as required by Article 16 of the [CBA]? If not, what shall the remedy be?"

{¶5} The arbitrator issued his award in December 2010. He determined that Parma did not have just cause to terminate DeCarlo and ordered that he be reinstated

immediately without back pay. In February 2011, the city filed an application to vacate, modify, or correct the arbitration award in the common pleas court. The city claimed in the application that the arbitrator "exceeded his authority, or imperfectly executed the same, or that the award was unlawful, arbitrary, capricious, and/or fails to draw its essence from the collective bargaining agreement." The matter was submitted on briefs. In September 2011, the trial court issued its judgment confirming and enforcing the arbitration award. The city now presents two assignments of error for our review:

> I. The trial court erred when it applied the lax standard for review of an arbitrator's award to the issue of vacating the award due to violation of public policy.

> II. The trial court erred in affirming the arbitrator's award due to the arbitrator's failure to consider essential tenets of arbitral law.

## II. Law

{¶6} Under R.C. 2711.10, a common pleas court shall vacate an arbitration award if:

> * * *

> (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

{¶7} Public policy favors and encourages arbitration, and courts are indulged to favor the regularity and integrity of proceedings before the arbitrator. *Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 84, 488 N.E.2d 872 (1986). The Ohio Supreme Court has placed restrictions on a reviewing court's authority to vacate an arbitrator's award so as not to undermine the integrity and

purposes of the arbitration system. *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.*, 49 Ohio St.3d 129, 131-132, 551 N.E.2d 186 (1990).

{¶8} Appellate review of an arbitral proceeding is confined to an evaluation of the order issued by the trial court. *Orwell Natural Gas Co., Inc. v. PCC Airfoils, L.L.C.*, 189 Ohio App.3d 90, 2010-Ohio-3093, 937 N.E.2d 609 (8th Dist.), ¶ 8. A de novo review of the merits of the dispute is not within the contemplation of the statute. *Id.* citing *Buyer's First Realty, Inc. v. Cleveland Area Bd. of Realtors*, 139 Ohio App.3d 772, 784, 745 N.E.2d 1069 (8th Dist. 2000). "[O]nce a reviewing court determines that the arbitrator's award draws its essence from the parties' contract and is not unlawful, arbitrary or capricious, the reviewing court has no authority to vacate the award pursuant to R.C. 2711.10(D)." *Marra Constructors, Inc. v. Cleveland Metroparks Sys.*, 82 Ohio App.3d 557, 563, 612 N.E.2d 806 (8th Dist. 1993), citing *Findlay*.

### III. Review of Trial Court's Order

{¶9} In its order, the trial court made the following factual findings. After being notified on October 19, 2009 that he had tested positive for cocaine, on October 20, DeCarlo and Lee Wester, the union vice president, met with John French, the Fire Chief, and Captain Ralph Meno, DeCarlo's immediate supervisor. At the meeting, DeCarlo gave French and Meno doctors' letters about medications prescribed to him and information about false positives on drug tests. French concluded that DeCarlo was

denying that he had used cocaine, but never asked DeCarlo whether he had used it and DeCarlo never said that he had not used it. At the conclusion of the meeting, Chief French placed DeCarlo on leave and referred him to the city's employee assistance program ("EAP").

{¶10} A pre-disciplinary hearing was held on November 10, 2009. At the hearing, Chief French read DeCarlo his rights under *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967)[1] and asked DeCarlo if he had used cocaine. DeCarlo responded that he had used cocaine in high school, on one occasion in January 2009, and on October 10, 2009, a few days before the drug test.

{¶11} On November 13, 2009, French sent a report to the city's human resources director. In the report, French concluded that DeCarlo had not been honest about his cocaine use at the initial meeting on October 20. French further concluded that DeCarlo continued his deception on November 10 in describing the amount of cocaine he had used on October 10. French recommended that DeCarlo be discharged.

{¶12} On December 2, 2009, a pre-deprivation hearing was held with the city's safety director, Gregory Baeppler. Baeppler determined that the charges related to DeCarlo's drug use and dishonesty were substantiated. DeCarlo was terminated from

---

[1] In *Garrity*, the United States Supreme Court determined that the state cannot use for criminal purposes statements that were taken from employees during an internal investigation after the employee was assured that if he refused to answer the questions, he would be terminated from employment. Once employees received such assurances, the Supreme Court held "the choice imposed on [employees is] one between self-incrimination or job forfeiture," and such statements are therefore coerced. *Id.* at 495.

his position.

{¶13} After setting forth the parties' arguments and the standard of review for arbitration awards, the trial court addressed the CBA. The court considered Appendix B of the agreement, which governs the drug and alcohol testing policy and procedures. Specifically, the court referenced the following sections:

**Section 1 Policy:** The Parma Fire Department and the [union] recognize that drug use by employees would be a threat to the public welfare and the safety of department personnel. It is the goal of this policy to eliminate or absolve illegal drug usage through education and rehabilitation of the affected personnel.

* * *

**Section 10 Rehabilitation Program:** Any employee who tests positive for illegal drugs shall be medically evaluated, counseled and treated for rehabilitation as recommended by [an] E.A.P. counselor. Employees who complete a rehabilitation program will be re-tested randomly once every quarter for the following 24 months. An employee may voluntarily enter rehabilitation without a requirement or prior testing. If an employee tests positive during the 24 month period they shall be subject to disciplinary action as per the Department Rules and Regulations, the employee will be re-evaluated by an E.A.P. counselor to determine if the employee requires additional counseling and/or treatment. If an employee tests positive during this subsequent 24 month period which in effect will be the employee's third chance for rehabilitation, the employee will be subject to discipline as per the Department Rules and Regulations.

**Section 11 Duty assignment after treatment:** Once an employee successfully completes rehabilitation, they shall be returned to their regular duty assignment. Once treatment and any follow-up care is completed, and 2 years have passed since the employee entered the program, the employees personnel file shall be purged of any reference to his/her drug or alcohol problem.

{¶14} The trial court noted that the arbitrator's interpretation of the drug and alcohol policy did not contemplate automatic discharge of an employee after testing positive for the first time. The trial court further noted the arbitrator's observation that during recent negotiations between the fire department and the union, the parties agreed to not include a sentence prohibiting disciplinary action against an employee for a first offense unless the employee refused rehabilitation or failed to complete it. But the arbitrator explained that "'dropping the prohibition against any discipline is not the same thing as establishing termination as the appropriate penalty for a first offense.'" Trial court's order quoting arbitrator's decision.

{¶15} The trial court then reviewed the arbitrator's decision in light of the CBA and determined that the arbitrator had not exceeded his authority in applying the terms of the agreement. The trial court noted that it could not substitute its judgment for that of the arbitrator where the award appeared to be neither arbitrary nor capricious.

{¶16} In its first assignment of error, the city contends that the trial court used the wrong standard because the termination was based on public policy grounds, and "[w]hether public policy is violated is not a topic for an arbitrator to decide because public policy is [a] question of law for the courts." According to the city, "it is well recognized that use of cocaine is a violation of well established public policy."

{¶17} But the Ohio Supreme Court has held that "Ohio has no dominant and well-defined public policy that renders unlawful an arbitration award reinstating a safety-sensitive employee who was terminated for testing positive for a controlled

substance, assuming that the award is otherwise reasonable in its terms for reinstatement."

*S.W. Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d 108, 114, 2001-Ohio-294, 742 N.E.2d 630. In *S.W. Ohio Regional Transit Auth.*, a bus repairperson, whose position was classified as "safety-sensitive," was terminated after he tested positive for marijuana. The matter was arbitrated under a collective bargaining agreement. The arbitration panel found that the employee's termination violated the "sufficient cause" requirement of the agreement and reinstated him. On appeal, the common pleas court confirmed the award, holding that it drew its essence from the collective bargaining agreement and was not unlawful, arbitrary, or capricious. Upon further appeal, however, the First Appellate District reversed the trial court, finding that reinstating a safety-sensitive employee who tested positive for drugs would violate public policy.

{¶18} In finding that there is no public policy on the issue, the Court reasoned that public policy does not "preclude a person who tests positive for a controlled substance from having a second chance." *Id.* at 112. Further, in considering the arbitration award, the Court determined that it was not unlawful, arbitrary, or capricious and that it drew its essence from the essence of the collective bargaining agreement — the same standard used by the trial court here.

{¶19} In light of the above, the trial court did not use the incorrect standard of review in considering the arbitration award. We are also not persuaded by Parma's reliance on *Akron Met. Hous. Auth. v. Local 2517, Am. Fedn. of State, Cty., & Mun. Emp.,*

*AFL-CIO*, 161 Ohio App.3d 594, 2005-Ohio-2965, 831 N.E.2d 493 (9th Dist.). In *Akron Met. Hous. Auth.*, a maintenance worker with the Akron Metropolitan Housing Authority ("AMHA") was terminated and his union filed a grievance contesting the termination. The matter proceeded to arbitration and the arbitrator determined that AMHA had wrongfully discharged the employee and reinstated him with back pay, benefits, and allowances. AMHA filed a motion to vacate or modify the arbitration award, which was denied.

{¶20} On appeal, the Ninth Appellate District held that the reinstatement of the employee violated explicit public policy in favor of workplace safety and vacated the trial court's judgment. The following facts led up to the employee's termination. In August 2001, the employee and his supervisor had a confrontation when the employee, who was outside on the balcony of a unit he was supposed to be working on, refused to come in the unit to discuss a project with the supervisor. Eventually the employee went into the unit, where he threatened the supervisor. The supervisor, concerned for his safety, called his supervisor, who told the employee to go home for the day.

{¶21} Following the altercation, the employee's immediate supervisor was approached by other employees who told the supervisor to be careful because the employee was dangerous. The supervisor told AMHA officials that the employee had previously told him that he had gone to a previous supervisor's house with a gun because he was angry at the supervisor for disciplining him. When questioned by AMHA officials, the employee admitted that he had had a disagreement with the supervisor, and

when asked about going to a prior supervisor's house with a gun, the employee neither denied telling the story to his supervisor, nor that it had happened.

{¶22} The employee was suspended, ordered to get anger-management treatment, and informed that he needed authorization to return to work. In suspending him, AMHA considered the August 2001 incident, two past suspensions for verbal altercations, and several performance evaluations in which the employee had received poor scores.

{¶23} After two doctors tested and counseled the employee, they informed AMHA that they were of the opinion that there "'continues to be a risk that [the employee's] anger will lead to further, potentially explosive incidents,'" and that the employee could not "'safely return to work at this time.'" *Akron Met. Hous. Auth.* at ¶ 20, quoting the treating doctors' letters. The employee then sought treatment from another agency, but the agency would not provide a recommendation that he return to work.

{¶24} AMHA continued its investigation of the employee while he was on suspension and learned that: (1) he had gone to a supervisor's house with a gun because he was mad about his suspension; (2) he had threatened another employee; (3) several employees asked to be provided with bullet proof vests if he was allowed to return to work; and (4) two employees stated they would quit if they had to work with him.

{¶25} The appellate court found that the trial court's judgment in favor of the employee, "despite the psychologists' recommendations and his known propensity toward violent statements, is clearly a violation of explicit public policy in favor of workplace safety." *Id.* at ¶ 25.

{¶26} *Akron Met. Hous. Auth.* is distinguishable from this case. It involved workplace safety as the public policy consideration, not illegal drug use, as here. As already discussed, there is no established public policy regarding terminating an employee for testing positive for a controlled substance. Further, the facts surrounding the discharge in *Akron Met. Hous. Auth.* are entirely different from the facts surrounding DeCarlo's discharge.

{¶27} In light of the above, the first assignment of error is overruled.

{¶28} For its second assigned error, the city contends that the trial court erred in affirming the arbitration award because the arbitrator failed to "consider essential tenets of arbitral law" in its analysis of "just cause" for termination.

{¶29} Because the arbitrator's "interpretation of the contract is what the parties bargained for in agreeing to submit their disputes to final and binding arbitration," as already stated, we review to determine whether the arbitrator's award draws its essence from the parties' contract and is not unlawful, arbitrary, or capricious. *Marra Constructors, Inc. v. Cleveland Metroparks Sys.*, 82 Ohio App.3d at 563, citing *Hillsboro v. Fraternal Order of Police, OLC, Inc.*, 52 Ohio St.3d 174, 177, 6 N.E.2d 1186 (1990). Our review is not de novo; it is limited to the trial court's order. *Orwell Natural Gas Co., Inc. v. PCC Airfoils, L.L.C.*, 189 Ohio App.3d 90 at ¶ 8.

{¶30} Upon review, we find that the award draws its essence from the parties' agreement and is not unlawful, arbitrary, or capricious. In so finding, we focus on the sections of the CBA referenced by the trial court. Section 1, which sets forth the purpose

of the drug and alcohol policy, states that, "[i]t is the goal of this policy to eliminate or absolve illegal drug usage through education and rehabilitation of the affected personnel." Section 10 sets forth rehabilitation procedures for "[a]ny employee who tests positive for illegal drugs" and states that such an employee "shall be medically evaluated, counseled and treated for rehabilitation as recommended by [an] E.A.P. counselor." Section 11, which governs assignment after rehabilitation, provides that, "[o]nce an employee successfully completes rehabilitation, they shall be returned to their regular duty assignment."

{¶31} Considering these provisions, as the trial court did, we find that the arbitrator's decision to reinstate DeCarlo comported with the goal of the parties' agreement, especially in light of the fact that DeCarlo had successfully completed a substance abuse program in April 2010. Moreover, the decision was not unlawful, arbitrary, or capricious. We decline to examine the particulars of the arbitrator's decision, as urged by the city — our review is not de novo. We have reviewed the trial court's order, as required, and find that the court properly found that the arbitrator's award drew its essence from the parties' contract and was not unlawful, arbitrary, or capricious. The second assignment of error is, therefore, overruled.

{¶32} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga

County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MARY J. BOYLE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR