JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Fortney Weygandt, Inc. (FW), appeals the trial court's order confirming the arbitration award issued in this matter. For the foregoing reasons, we affirm.
 {¶ 2} On July 30, 2002, FW filed a demand for arbitration with the American Arbitration Association (AAA) against appellee Frisch's Restaurants, Inc. (Frisch's), claiming $293,637.81 for unpaid invoices relating to a construction contract. Frisch's answered and asserted a counterclaim against FW for $1,000,000.
 {¶ 3} FW also filed third-party claims against appellee, J. Goss Concrete, Inc. (Goss), and appellee, F.J. Schirack, Inc. (Schirack). Goss and Schirack filed separate answers, and Goss also asserted a counterclaim against FW for $56,828.66.
 {¶ 4} The facts giving rise to the instant action began on April 9, 2001, when Frisch's and FW entered into a contract for the construction of a Golden Corral restaurant at 4926 Dressler Road, Canton, Ohio.
 {¶ 5} The architect designed a deep foundation system in which "piles," which are steel cylinders filled with concrete and rebar, [1]
and "pile caps," which are additional concrete and rebar, would reinforce the concrete slab upon which the restaurant would be built. The structure required a deep foundational system *Page 2 
because the site contained fill, organic peat, silt, and highly plastic clay, which is not suitable for a typical foundation.
 {¶ 6} FW contracted with Schirack to install the foundation piles and contracted with Goss to perform the concrete and rebar work pursuant to the architect's plans.
 {¶ 7} Upon completion of construction, however, Frisch's discovered the following deficiencies: (1) soil had settled under the foundation, (2) there were an inadequate number of piles constructed, (3) some of the piles were located incorrectly, and (4) some pile caps were missing. The design errors prevented use of the newly built structure. Frisch's was forced to demolish the structure and begin again.
 {¶ 8} In a separate action, Frisch's settled its claims against the architect and its geotechnical engineering firm for design errors in the amount of $1,700,000. See Frisch's Rest, Inc. v. Lehmann Mehler HirstThornton, Assoc, Stark County Common Pleas Case No. 2002-CV-02929.
 {¶ 9} By filing the demand for arbitration against Frisch's, FW sought to recover for unpaid invoices. The parties selected a panel of three arbitrators, in which attorney David Schaefer (Schaefer) acted as panel chair.
 {¶ 10} Arbitration proceeded and, on August 23, 2006, in a unanimous decision, the panel found as follows: in favor of Frisch's and against FW; in favor of *Page 3 
FW and against Goss; and lastly, it found that since FW had paid Schirack in full, it waived any right to assert claims against Schirack for improper work. The arbitration panel awarded Frisch's $537,967.27 against FW and awarded FW $13,642.81 against Goss.
 {¶ 11} On September 6, 2006, Goss filed a motion for clarification or modification of the arbitrators' award, which was granted by the arbitration panel. As such, Goss owed FW zero dollars.
 {¶ 12} On October 11, 2006, after the arbitration award was issued, FW filed an objection to Schaefer's continued service as the arbitration panel chair. In support thereof, FW cited to three previously undisclosed referrals from Benesch, Friedlander, Coplan 
Aronoff L.L.P. (Benesch) to Schaefer during the pendency of the arbitration. FW argued that the undisclosed referrals created a conflict of interest because Thomas Crist (Crist), a partner at Benesch, represented Frisch's throughout the arbitration process.
 {¶ 13} Schaefer had disclosed his prior employment with Benesch during the arbitrator selection process but had not disclose any referral information. After arbitration, Schaefer not only disclosed the three referrals that he accepted from Benesch during the pendency of the arbitration, but he also disclosed two referrals that he accepted from Benesch prior to the arbitration taking place. *Page 4 
 {¶ 14} On October 19, 2006, AAA denied FW's objection to Schaefer's continued service, stating the following: "After careful consideration of the parties' contentions, the Association has determined that David A. Schaefer will be reaffirmed as an arbitrator in the above matter." AAA reiterated the same on October 30, 2006, via letter, which also reads in part: "After careful consideration of the parties' contentions, the Association has determined to reaffirm all members of the arbitration panel in this matter, per our authority under R-20 of the Rules."
 {¶ 15} On November 9, 2006, Frisch's filed an application for an order confirming the arbitration award with the trial court. Goss and Schirack filed the same.
 {¶ 16} FW filed a response and a cross-motion for an order vacating the arbitration award. FW also filed a motion for leave to conduct discovery.
 {¶ 17} On April 23, 2007, the trial court issued its journal entry confirming the arbitration award and denying FW's motion to vacate the award and motion for discovery as follows:
 "It is unfortunate that, whether through inadvertence or other cause, panel chair David A. Schaefer did not fully disclose the three referrals he received from an attorney at Benesch Friedlander Coplan Arnoff L.L.P. However, the findings by Marvin C. Harris, case manager of the American Arbitration Association, outlined in his letters of October 19, 2006 and October 30, 2006, found no basis for a finding the panel chair exhibited any bias.
 This court, over 20 years on the bench, has had numerous opportunities to evaluate all the attorneys in this case and the court *Page 5 
finds no basis to question the credibility or ethics of any of them, including Mr. Schaefer. Furthermore, it is noteworthy that in this particular case, the arbitration decision was unanimous, with no evidence and no credible assertions of any undue influence by the panel chair upon the other two arbitrators. Accordingly:
 Respondent Fortney Weygandt, Inc.'s motion for leave to conduct discovery is denied. Respondent Fortney Weygandt, Inc.'s cross-motion for an order vacating the arbitration award is denied.
 Applicant Frisch's Restaurants, Inc.'s application for an order confirming arbitration award is granted.
 Respondent J. Goss Concrete, Inc.'s application for an order confirming arbitration award is granted.
 Respondent F. J. Schirack, Inc.'s application for an order of confirmation of arbitration award is granted."
 FW appeals and asserts two assignments of error for our review.
"[1.] The trial court's refusal to vacate an arbitration award in favor of Appellees was in error when the arbitration panel chair failed to make numerous disclosures including the fact that attorneys for the lead Appellee referred to the Panel Chair three significant cases during the arbitration."
 {¶ 18} FW argues that the trial court erred when it granted Frisch's's, Goss's, and Schirack's applications for orders confirming the arbitration awards and when it denied its motion for an order to vacate the arbitration award.
 {¶ 19} "Appellate review of an arbitration award is limited to an evaluation of the confirmation order of the court of common pleas. The substantive merits of the award are not reviewable absent evidence of material mistakes or extensive *Page 6 
impropriety." Williams v. Colejon Mechanical Corp., Cuyahoga App. No. 68819, 1995 Ohio App. LEXIS 5196. "Overturning an arbitration award on appeal is more difficult than an ordinary civil appeal from a judgment in a court of law." Olah v. Ganley Chevrolet, Inc., Cuyahoga App. No. 86132, 2006-Ohio-694.
 {¶ 20} Furthermore, a trial court's review of an arbitration award is also narrow, and may be overturned only upon the grounds set forth in R.C. 2711.10.
 "It is well-settled that the jurisdiction of courts in the area of arbitration and arbitration awards is limited. * * * Judicial intervention in this area is statutorily restricted by Sections 2711.09, 2711.10 and 2711.11. These sections give the court the power to vacate or modify an arbitration award only on certain enumerated grounds." Cleveland Police Patrolmen's Assn. v. Cleveland (1995), 107 Ohio App.3d 248.
 {¶ 21} R.C. 2711.10 sets forth the grounds upon which a trial court may vacate an arbitration award and reads, in part:
 "In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if * * * (B) Evident partiality or corruption on the part of the arbitrators, or any of them."
Regarding evident partiality or bias, we have held that:
 "To constitute grounds for setting aside an arbitration award on the basis of bias, the bias must have been such as to furnish reasonable grounds for believing that the arbitrator was improperly influenced. If the interest of the arbitrator was too remote and contingent to induce any reasonable suspicion that it could have influenced his decision, the award will not be set aside." Gerl Const. Co. v. Medina Cty. Bd. of Commrs,. (1985), 24 Ohio App.3d 59, at paragraph one of the syllabus. *Page 7 
 {¶ 22} "R.C. 2711.10(B) requires more than the mere imaginative appearance or suspicion of partiality." Williams at 7-8. This is so because: "The law favors the amicable adjustment of difficulties, and arbitration has been favored by the courts in this state from early times." Corrigan v. Rockefeller (1902), 67 Ohio St. 354. "It is the policy of the law to favor and encourage arbitration and every reasonable intendment will be indulged to give effect to such proceedings and to favor the regularity and integrity of the arbitrator's acts." Campbell v. The Automatic Die Products Co. (1954),162 Ohio St. 321.
 {¶ 23} Regarding bias, the Supreme Court further held:
 "An arbitration award should be vacated where undisclosed relationships between an arbitrator and one of the parties create an impression of possible bias. However, not every relationship requires that an award be vacated, i.e., only relationships from which one could reasonably infer bias, not those which are peripheral, superficial or insignificant will require vacating the award." Id. at paragraph two of the syllabus.
 {¶ 24} AAA's Code of Ethics for Arbitrators in Commercial Disputes, Canon II, provides: "An arbitrator should disclose any interest or relationship likely to affect impartiality or which might create an appearance of partiality." Canon II(A) details this requirement and also reads, in part:
 "Persons who are requested to serve as arbitrators should, before accepting, disclose * * * (2) any known existing or past financial, business, professional or personal relationships which might reasonably affect impartiality or lack of independence in the eyes of any of the parties. For example, prospective arbitrators should disclose any such relationships which they personally have with any party or its *Page 8 
lawyer * * *. They should also disclose relationships involving * * * their current employers, partners, or professional or business associates that can be ascertained by reasonable efforts."
 {¶ 25} In light thereof, FW poses two arguments in support of vacating the arbitration award based upon Shaeffer's alleged extensive impropriety. FW first cites Schaefer's failure to disclose his acceptance of two referrals from Benesch between 1993, when Schaefer left Benesch, and 2002, the commencement of arbitration. Additionally, FW argues that Schaefer demonstrated extensive impropriety by accepting three referrals from Benesch during the pendency of the arbitration and by failing to disclose the referrals.
 {¶ 26} However, a review of the record reveals that Schaefer disclosed the following during the panel selection: "I was a partner at Benesch Friedlander from June 1984 through October 1993 at which time I left voluntarily. I do not know Mr. Crist, as he was not at Benesch Friedlander while I was a partner at the firm." (Arbitration Disclosure Form, 11/08/04).
 {¶ 27} An additional correspondence from AAA to FW, Frisch's, Goss, and Schirack during the panel selection reads in part: "The arbitrator [Schaefer] has indicated that the disclosure will in no way prevent him from fairly and impartially discharging his duties as arbitrator in the above-referenced matter." (AAA correspondence, 11/9/04). *Page 9 
 {¶ 28} Furthermore, Schaefer willingly disclosed additional information regarding the challenged referrals prior to FW filing its objection to Schaefer's continued service on the arbitration panel. When questioned via interrogatories propounded by FW, and via a letter dated September 5, 2006, Schaefer disclosed his acceptance of only two referrals from Benesch between 1993 until 2002 when FW filed for arbitration, a period of nine years, namely, Hyosung America, Inc. v.Sheet Metal Mfg., Cuyahoga County Common Pleas Case No. CV-387940 and a non-litigation matter to Schaefer during that time.
 {¶ 29} Schaefer also disclosed his acceptance of three referrals during the pendency of the arbitration: Hurt v. Broadview Nursing Home,Inc., Cuyahoga County Common Pleas Case No. CV-542973; Anney'sInsulation, Inc. v. Bi-State Truck Sales, Lorain County Common Pleas Case No. CV-05-144156; and Ferrous Realty Ltd. v. Kimko DevelopmentCorp., Cuyahoga County Common Pleas Case No. CV-470069.
 {¶ 30} Eric L. Zalud (Zalud), a partner at Benesch, referred theHurt and Anney's Insulation matters to Schaefer. Lawrence M. Bell (Bell), also a partner at Benesch, referred Ferrous Realty to Schaefer.
 {¶ 31} Schaefer noted as well that James Imbrigiotta (Imbrigiotta), counsel for Goss, participated in the Anney's Insulation, Inc. matter — evidence that Schaefer made no attempt to keep his referrals secret. (Schaefer letter, 9/05/2006). *Page 10 
 {¶ 32} Crist, a partner at Benesch and counsel for Frisch's in the case sub judice, denied any involvement with the referrals or any knowledge of referrals via affidavit:
 "I joined the law firm of Benesch * * * in 2000 as an associate and became a partner on January 1, 2002. Since I joined the firm in 2000, I have never worked together with Eric L. Zalud, Esq. on any client matter in the field of construction or otherwise." (Crist affidavit, 11/07/2006).
Crist also stated:
 "I never worked with Mr. Schaefer at Benesch Friedlander and did not even know of him until he was appointed AAA arbitrator in the dispute between Frisch's and FW [Fortney] related to the restaurant. I do not have past or present business or social relationship with Mr. Schaefer. My first notice that Mr. Schaefer worked at Benesch Friedlander in the past was when he disclosed, in response to the intitial appointment by AAA, that he had been a long-time partner at Benesch Friedlander from mid-1984 to late-1993." (Crist affidavit, 11/07/2006).
Crist indicated that he had no knowledge prior to issuance of the arbitration award that Zalud or Bell referred business to Schaefer. (Crist affidavit, 11/07/2006). Crist also stated that he never discussed the Frisch's matter with Zalud or Bell. (Crist affidavit, 11/07/2006).
 {¶ 33} Zalud, via affidavit, indicated that he referred theHurt and Anney's Insulation matters to Schaefer. (Zalud affidavit, 11/07/2006). Zalud referred both cases to Schaefer because Benesch had a conflict of interest in any continued representation of the matters. (Zalud affidavit, 11/07/2006). Zalud also stated that he never spoke with Crist or Schaefer regarding Frisch's arbitration because he had *Page 11 
no knowledge of the arbitration until the instant affidavit was required. (Zalud affidavit, 11/07/2006).
 {¶ 34} Bell, via affidavit, indicated that he referred the FerrousRealty matter to Schaefer. (Bell affidavit, 11/07/2006). Bell stated that he never spoke with Crist or Schaefer regarding the arbitration because he had no knowledge of the arbitration. (Bell affidavit, 11/07/2006).
 {¶ 35} Furthermore, pursuant to Gerl Const. Co.:
 "While the case law indicates that an undisclosed relationship between an arbitrator and a nonparty may be sufficient to create an impression of bias, the nexus between the nonparty and the arbitration must be substantial in order to reasonably create such an impression. However, in the final analysis, these matters must be decided on a case-by-case basis." Gerl Const. Co., at paragraph three of the syllabus.
 {¶ 36} Thus, the substantiality of the undisclosed relationship must be determined on a case by case basis, and understandably so, given the gravity of the issue.
 {¶ 37} Here, however, the nexus between Benesch's referrals, Crist, and Schaefer does not rise to the requisite level of substantiality. FW provides no direct or definite evidence that Schaefer failed to act with anything other than complete impartiality in arbitrating the case sub judice, nor can we find the same. Additionally, the evidence that FW does provide is too indirect and tenuous to prove that Schaefer acted with partiality. Thus, the trial court did not err when it *Page 12 
granted Frisch's's, Goss's, and Schirack's applications for orders confirming the arbitration awards and when it denied FW's motion to vacate the arbitration award.
 {¶ 38} Notably, the five referrals at issue have no relation to the case sub judice, and the panel acted unanimously in issuing its award. Thus, a review of the evidence does not reveal a relationship between Schaefer and Benesch rising to the level of extensive impropriety, warranting vacation of the arbitration award.
 {¶ 39} The trial court's April 23, 2007 journal entry also made clear that it found no bias or any undue influence in the case sub judice. The trial court noted AAA found the same and that the arbitration decision was unanimous. The trial court also noted that it knew all the attorneys participating in the case and found no basis to question the credibility or ethics of any of them based upon the allegations presented for review.
 {¶ 40} Therefore, although Schaefer should have disclosed the referrals at issue, based upon the facts and circumstances in the instant case, we cannot find extensive impropriety warranting vacation of the arbitration award.
 {¶ 41} FW's first assignment of error is overruled.
 {¶ 42} "[2.] The trial court erred in failing to permit discovery of matters relevant to the arbitration panel chair's partiality."
 {¶ 43} FW argues that the trial court erred when it denied its motion for leave to conduct discovery. *Page 13 
 {¶ 44} "The standard of review of a trial court's decision in a discovery matter is whether the court abused its discretion." State exrel. Denton v. Bedinghaus, 98 Ohio St.3d 298, 2003-Ohio-861. "The term `abuse of discretion' connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 45} Although FW asked for leave to conduct discovery while the matter was on appeal with the trial court, the record reveals that FW had already conducted extensive discovery regarding Schaefer's alleged "evident partiality" in the earlier proceedings. During that discovery process Schaefer willingly disclosed necessary information while the matter was pending before AAA. Zalud and Bell both submitted affidavits disclosing their relationship with Schaefer and their referrals to Schaefer. Crist also submitted an affidavit indicating that he had never met Schaefer prior to the arbitration and was not aware of any referrals from Benesch to Schaefer. The parties also exchanged and documented extensive e-mails regarding the same. Therefore, we cannot find that the trial court abused its discretion when it denied FW's motion for leave to conduct discovery.
 {¶ 46} Accordingly, FW's second assignment of error is overruled.
 Judgment affirmed. *Page 14 
It is ordered that appellees recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J. and MARY EILEEN KILBANE, J., CONCUR.
[1] "Rebar" is a bar or rod made of steel and used to reinforce concrete. *Page 1