JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, City of Cleveland, appeals the trial court's order confirming the arbitration award issued in this mater and denying its motion to vacate the arbitration award, or in the alternative, to modify the arbitration award. For the foregoing reasons, we affirm.
 {¶ 2} The facts giving rise to the instant case occurred on January 29, 2006 and August 27, 2006, respectively. On January 29, 2006, the Cleveland Police Department's Special Weapons and Tactical Unit (SWAT Unit) was called in at approximately 5:00 a.m. to respond to an emergency; however, approximately four minutes later the assignment was cancelled.
 {¶ 3} On August 27, 2006, the SWAT Unit was called in at approximately 12:45 p.m. to respond to an emergency; however, approximately ten minutes later, the assignment was also cancelled. On each date, the SWAT Unit members did not arrive at the scene, although they had already left their original locations to respond.
 {¶ 4} The participating SWAT Unit members thereafter applied for overtime pay for four hours of work, pursuant to the exact language of the Collective Bargaining Agreement (CBA), Article XI(15)(d). The section dealing specifically with call-in pay, and entitled as such, reads as follows:
 "Call-In Pay. An employee required to report to work for reasons other than court appearance, prosecutor reviews, matters involving *Page 4 
the City Law department or other court related or judicially related matter, when the time required is not contiguous to his/her scheduled time of work, then the employee shall be guaranteed a minimum of four hours work, compensated at the rate of one and one-half (1-1/2) times the employee's regular rate of pay." Article XI(15)(d).
 {¶ 5} The City of Cleveland denied the SWAT Unit members' applications for overtime pay. Thereafter, the SWAT Unit members filed a grievance with the Cleveland Police Patrolmen's Association (CPPA). As a result thereof, the City of Cleveland and the CPPA agreed to consolidate the incidents for purposes of binding arbitration.
 {¶ 6} On March 13, 2007, the matter proceeded to arbitration and the CPPA argued that the City of Cleveland violated the CBA, Article XI(15)(d), when it refused to pay SWAT Unit members the contractual and guaranteed four hours of overtime pay for the days at issue.
 {¶ 7} Conversely, the City of Cleveland argued that it is not obligated to pay for the guaranteed minimum four hours of overtime pay pursuant to Article XI(15)(d) because of the short duration between the initial phone calls and subsequent cancellations.
 {¶ 8} The transcript of the arbitration reveals that when a SWAT Unit member is called in for duty, his or her response is mandatory. (Tr. 104.) When the SWAT unit members were called in to respond on January 29, 2006, at approximately 5:00 a.m., not only were the SWAT Unit members awakened, but *Page 5 
their families were disturbed as well. (Tr. 83, 86.) All three SWAT Unit members testified that they had already left their homes when the call-in was cancelled. (Tr. 41, 84, 102.) SWAT Unit member Rick Sheppard testified that he lives close to the highway and was already on I-480 when the call-in was cancelled. (Tr. 84.) The responding SWAT Unit members also testified that their adrenaline rushes in response to a call-in and that falling back to sleep upon cancellation is often difficult. (Tr. 43-44, 83.)
 {¶ 9} Regarding the August 27, 2006 call, two SWAT Unit members testified that they left their secondary employment security posts to respond. (Tr. 56-57, 103, 203-204.)
 {¶ 10} On October 1, 2007, the arbitrator issued his decision and concluded that, "the grievances are well taken and the City is ordered to pay the affected officers in each instance that as required by the contract." (Arbitration Award at 7.)
 {¶ 11} On December 24, 2007, the City of Cleveland filed a "motion to vacate the arbitration of AAA Case No[.] 53 390 00383 06, or in the alternative modify the award" with the trial court. On February 4, 2008, the CPPA filed a motion to confirm the arbitration award.
 {¶ 12} On April 22, 2008, the trial court confirmed the arbitration award and denied the City of Cleveland's motion to vacate, or in the alternative, to modify the arbitration award. The trial court drafted an extensive judgment *Page 6 
entry and, after finding that the City of Cleveland failed to argue that the arbitrator exceeded his powers, concluded "[t]here is nothing in the record indicating that the arbitrator's decision was arbitrary, capricious or unlawful."
 {¶ 13} The City of Cleveland appeals, asserting one assignment of error for our review.
 ASSIGNMENT OF ERROR
 "The Trial Court erred to the prejudice of Plaintiff-Appellant City of Cleveland by holding that there was nothing in the record to indicating [sic] that the Arbitrator's decision was arbitrary, capricious or unlawful. The Arbitrator exceeded his authority by ignoring the clear contract language; rendering a decision that is absurd on its face and ignoring twenty years of past practice.
 The Trial Court erred to the prejudice of Plaintiff-Appellant City of Cleveland, by holding that appellant-City did not claim that the Arbitrator exceeded his powers or so imperfectly executed them that a mutual, final and definitive award upon the subject matter submitted was not made."
 {¶ 14} The City of Cleveland argues that the trial court erred when it confirmed the arbitration award, finding that nothing in the record indicates that the Arbitrator's decision was arbitrary, capricious, or unlawful. Further, the City of Cleveland argues that the trial court erred when it found that the City of Cleveland did not demonstrate that the Arbitrator exceeded his powers or so imperfectly executed them that a definitive award upon the subject matter submitted was not made. *Page 7 
 {¶ 15} As it pertains specifically to collective bargaining agreements, the Supreme Court of Ohio held:
 "An arbitrator's award draws its essence from a collective bargaining agreement when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious, or unlawful." Mahoning Cty. Bd. of Mental Retardation v. Mahoning Cty. TMR Edn. Assn. (1986), 22 Ohio St.3d 80.
 {¶ 16} Furthermore, "[a]ppellate review of an arbitration award is limited to an evaluation of the confirmation order of the court of common pleas." Williams v. Colejon Mechanical Corp. (Nov. 22, 1995), Cuyhaoga App. No. 68819. "Overturning an arbitration award on appeal is more difficult than an ordinary appeal from a judgment in the court of law." Olah v. Ganley Chevrolet, Inc., Cuyahoga App. No. 86312,2006-Ohio-694.
 {¶ 17} It must also be noted that, "[i]n agreeing to submit disputes to arbitration, the parties to a collective bargaining agreement agree to accept the result of arbitration, even if it is legally or factually wrong." City of Reynoldsburg v. Fraternal Order of Police, 10th Dist. No. 03AP-551, 2003-Ohio-6933.
 {¶ 18} "[A] trial court's review of an arbitration award is also narrow and may be overturned only upon the grounds set forth in R.C. 2711.10." Frisch's Restaurants, Inc. v. Fortney Weygandt, Inc., Cuyahoga App. No. 89802, 2008-Ohio-4121. *Page 8 
 {¶ 19} "Judicial intervention in this area is statutorily restricted by Sections 2711.09, 2711.10, and 2711.11. These sections give the court the power to vacate or modify an arbitration award only on certain enumerated grounds." Cleveland Police Patrolmens Assn. v. Cleveland
(1995), 107 Ohio App.3d 248.
 {¶ 20} R.C. 2711.10 sets forth those grounds upon which a trial court may vacate arbitration awards and includes the following:
 "In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if *** [t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." R.C. 2711.10(D).
 {¶ 21} The City of Cleveland argues that the trial court's decision is not supported by the record because: the arbitrator exceeded his authority by ignoring the clear contract language of the CBA; the arbitrator rendered a decision that is absurd on its face, ignoring twenty years of past practice; the trial court overlooked the importance of past practice in labor matters; and lastly, the trial court erred when it held that there is nothing in the record indicating that the arbitrator's decision was arbitrary, capricious, or unlawful. The City of Cleveland cites to R.C. 2711.10(D) in support thereof.
 {¶ 22} Regarding the City of Cleveland's argument that the arbitrator exceeded his authority by ignoring the contract language of the CBA, we have held that: *Page 9 
 "A court construing a contract attempts to discover and effectuate the intent of the parties, which is presumed to reside in the language chosen by the parties in the agreement. Common words appearing in a written instrument are to be given their plain and ordinary meaning unless some other meaning is clearly intended from the face or overall contents of the instrument." Willard Const. Co. v. City of Olmsted Falls, Cuyahoga App. No. 81551, 2003-Ohio-3018.
 {¶ 23} A review of the arbitration award reveals that the arbitrator did not, as the City of Cleveland suggests, ignore the clear contract language of the CBA. Rather, the arbitration award reads, in part:
 "As earlier noted this grievance is governed by Article XI(15)(d) of the CBA, the language which is clear. An employee required to report to work at a time `not contiguous to his/her scheduled time of work' is entitled to a `minimum of four hours work' `at a rate of one and a half time the employees regular rate of pay' except in certain instances not applicable here. In this case the evidence is clear that the grievants were called to work once in the early morning and the other Sunday afternoon albeit both times, for only a short time before calls were made canceling the emergency.
 It is this arbitrator's opinion if the parties want to make exceptions to the clear language of the Article, or clarify the clause[,] it is up to them to do so through the collective bargaining procedure. It is not the role of the arbitrator to establish a `bright line' when a call is a call and when it is not. The SWAT officers are required to report to work when they receive the initial page. They have no choice but to stop whatever they are doing. The City's position that they do not report until they arrive at the crime scene would add verbiage to the contractual language which is beyond the scope of the arbitrator's authority.
 Following the clear reading of the Article is particularly applicable with respect to its application to SWAT team members. When they receive a call, they know they are likely to face a dangerous situation. There is nothing discretionary about what they can do upon receipt of a call ***. They have no time to plan as they have to *Page 10 
leave immediately. Many calls come in[,] as one did[,] while they are sleeping. Other times they have to stop everything and proceed to the scene.
 To suggest less than ten minutes between call and cancellation is a minor inconvenience and thus not worthy of remuneration does not take into consideration the realities of the situations. A call like that on January 29, 2006 wakes up not only the officer but the whole family. As two of the officers describe, emergency calls set up an adrenaline `rush' as they are facing an unknown, a possible life threatening situation ***. Under the circumstances it is easy to understand that a mere four or five minute encounter can have longer effects such as the inability to go back to sleep." (Arbitration Award at 5-6.)
 {¶ 24} The four corners of the CBA require that the SWAT Unit members be paid overtime for the dates at issue. Article XI(15)(d) of the CBA, entitled "Call-In Pay," has remained unchanged for more than two decades. "Call-In Pay," given its plain and ordinary meaning pursuant toWillard Const. Co., requires that overtime pay is owed upon call-in, despite the City of Cleveland's argument otherwise.
 {¶ 25} Furthermore, pursuant to the four corners of the CBA and in reference to Article XI(15)(d) specifically, the SWAT Unit members were called in on January 29, 2006 and August 27, 2006, to report to work at times not *Page 11 
contiguous to their scheduled time of work, thus entitling them to overtime pay. As the "Call-In Pay" provision clearly requires, "the employee shall be guaranteed a minimum of four hours work, compensated at the rate of one and one-half (1-1/2) times the employee's regular rate of pay." Article XI(15)(d).
 {¶ 26} The CBA is an extensive contract that the City of Cleveland and the CPPA created together. Included therein are thirteen different sections pertaining to compensation, including: work schedule and pay period; work and lunch breaks; overtime; off-duty arrest pay; jury duty; court time; holiday pay; marksmanship compensatory time award; compensatory time off; family day; voluntary compensatory time buy out; method of compensation; and, of course, Article (15)(d), "Call-In Pay."
 {¶ 27} The "Call-In Pay" provision makes no mention of cancelled calls, which is notable because of the detail paid to compensation. If the City of Cleveland did not want to pay overtime for call-ins that are cancelled, they should have negotiated with the CPPA accordingly and included specific language in the CBA.
 {¶ 28} Additionally, although the City of Cleveland also argues in its brief that no officer has ever been paid four hours of overtime when a call-in was cancelled shortly after it was made, it fails to cite to any evidence in support thereof. Conversely, Cleveland Police Officer Don Meel, acting President of the CPPA, testified during arbitration that there is no required number of minutes *Page 12 
that must be triggered to warrant overtime pay. (Tr. 120.) We find, by reading the clear contract language, that the call-in triggers the call-in pay.
 {¶ 29} As such, we cannot find that the arbitrator exceeded his powers or imperfectly executed them because the record is clear that the arbitrator applied the clear terms of the contract to the facts of this case.
 {¶ 30} Pertaining to the City of Cleveland's argument that the arbitrator ignored twenty years of past practice, it must be noted that we look to extrinsic evidence, "only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning." Kelly v. Med. LifeIns. Co. (1987), 31 Ohio St.3d 130.
 {¶ 31} However, the arbitration award in the case sub judice, in addition to addressing the clear language of Article XI(15)(d) of the CBA, also considered past practice in drawing its conclusions and reads:
 "The City argues that past practice dictates the officers not be paid. They site [sic] the testimony of Chief McGrath, Commander Gingell and Commander Johnson and Commander Williams *** former SWAT team members. *** But even here the testimony is not conclusive. Chief McGrath testified that in prior years when he was a supervisor of the SWAT team, the officers were paid `four times' call-up pay if the cancellation came after he left the house ***. Each of the grievants testified that they had left the house when the January emergency was cancelled. The August emergency was cancelled approximately ten minutes after the initial call. ***.
 If here the officers had been paid, the grievances may not have been filed. As they were not, they came forward with their complaints." *Page 13 
 {¶ 32} Furthermore, the SWAT Unit members testified that they have never been denied overtime pay in similar circumstances in which their emergency call-in response was cancelled. (Tr. 87-88, 93, 104.)
 {¶ 33} Regarding past practice, the Supreme Court of Ohio held as follows:
 "Other states have contemplated the factors required for a past practice to be binding. The predominant definition, and the one used by both the arbitrator and the union, requires that to be binding on the parties to a collective bargaining agreement, a past practice must be (1) unequivocal, (2) clearly enunciated, and (3) followed for a reasonable period of time as fixed and established practice accepted by both parties. We think this is a sound and logical test, and hereby adopt it." Assoc. of Cleveland Fire Fighters, Local 93 of the Intl. Assoc. of Fire Fighters v. City of Cleveland, 99 Ohio St.3d 476, 2003-Ohio-4278.
 {¶ 34} Thus, in applying Local 93 to the instant case, we cannot find that the alleged past practices are unequivocal, clearly enunciated, and followed for a reasonable period of time as a fixed and established practice accepted by both parties.
 {¶ 35} Moreover, our review of the arbitrator's analysis reveals a crystal clear nexus between the CBA and the arbitration award and, thus, we cannot find that the arbitration award is arbitrary, capricious, or unlawful. *Page 14 
 {¶ 36} The City of Cleveland's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., and FRANK D. CELEBREZZE, JR., J., CONCUR. *Page 1