[Cite as *Teamsters Local Union No. 436 v. Cuyahoga Cty.*, 2012-Ohio-5289.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 98121

---

# TEAMSTERS LOCAL UNION NO. 436

### PLAINTIFF-APPELLANT

vs.

# CUYAHOGA COUNTY, OHIO

### DEFENDANT-APPELLEE

---

### JUDGMENT:
### REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-770712

**BEFORE:** E. Gallagher, J., Sweeney, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** November 15, 2012

**ATTORNEYS FOR APPELLANT**

Basil William Mangano
Ryan K. Hymore
Mangano Law Offices Co., LPA
2245 Warrensville Center Rd.
Suite 213
Cleveland, Ohio    44118

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:    Dale F. Pelsozy
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, J.:

**{¶1}** Appellant, Teamsters Local No. 436, appeals from the denial of a motion to vacate an arbitration award in the Cuyahoga County Court of Common Pleas. For the following reasons, we reverse.

**{¶2}** This case involves a labor dispute that occurred at the Cuyahoga County Airport ("airport"), located in Highland Heights between appellant and appellee, Cuyahoga County ("County"). In late 2010, appellant and the County negotiated a Collective Bargaining Agreement (hereinafter the "CBA") for certain employees at the airport, which came into effect on December 1, 2010.

**{¶3}** On December 17, 2010, the incident that gave rise to this case occurred. On that morning, a non-bargaining unit supervisory employee, Chris Guido, was called in early to borrow a forklift from another company located at the airport and to use the forklift to unload a delivery truck. The regularly scheduled bargaining unit employee had called off that morning and no other bargaining unit employees were called and given the opportunity to report to work before the supervisor was called.

**{¶4}** The gravamen of appellant's grievance is that the borrowing and use of the forklift to unload the truck constituted "bargaining unit work," and the County, in an effort to avoid paying overtime, breached the CBA by calling a supervisory employee to work prior to the ordinary start time of his shift and having him perform the work

without first offering it to union employees.

{¶5} The parties proceeded through the grievance procedure outlined in the CBA, which culminated in an arbitration on July 11, 2011. At the arbitration, witnesses on both sides gave extensive testimony regarding who had performed the forklift operations in the past.

{¶6} Brian Chalmers, a union member, testified that he had always performed such work in the past and had never seen or heard of a supervisory employee performing the work. (Arb. hrg. Tr. 68.) David Frank, whose 15 years of service made him the senior union member, also testified that he had always been the one to borrow and operate the forklift when necessary in the past. (Arb. hrg. Tr. 83.) Frank also testified that while he had not seen supervisory employees perform the work in the past, he had heard other union members mention that supervisory employees did indeed perform the work on occasion, even when union members were present. (Arb. hrg. Tr. 90–91.) Frank did not indicate, however, that the union members made any protest on those occasions. Guido, the supervisory employee who had actually performed the work on December 17, 2010, testified that in his eight years at the airport, he had been the one to borrow and operate the forklift between 50 and 75 percent of the time. (Arb. hrg. Tr. 99-100.) Kevin Delaney, the airport manager, testified that the ratio of union members operating the forklift to supervisory employees operating the forklift was "50/50." (Arb. hrg. Tr. 36.)

{¶7} In an opinion issued on September 21, 2011, the arbitrator found for the County writing that "[o]n the evidence presented, I am not persuaded that the task of

fetching and operating the forklift was normally performed by bargaining unit employees." (Complaint, ex. B at 7.) After summarizing the witness testimony, the arbitrator concluded that "[w]hat seems most likely from the testimony is that operating the forklift was not the exclusive province of either [the County] or the bargaining unit, but was done in the manner most convenient at the particular time." *Id.* In conclusion, the arbitrator reasoned that because the work was not "bargaining unit work," the County had the discretion to call in whomever it chose to perform the work. *Id.* Therefore, the County committed no violation of the CBA and the grievance was denied.

{¶8} On December 5, 2011, appellant filed a motion to vacate the arbitration award in the Cuyahoga County Court of Common Pleas. On March 13, 2012, the trial court denied appellant's motion to vacate. On March 20, 2012, appellant timely filed its notice of appeal to this court.

{¶9} Appellant's sole assignment of error states:

The trial court committed reversible error by failing, under R.C. 2711.10(D), to vacate an arbitration award rendered by an arbitrator who, in making his award, exceeded the express powers, i.e., arbitral subject matter jurisdiction, delegated to him under the collective bargaining agreement.

{¶10} Judicial review of arbitration awards is narrowly governed by R.C. 2711.10, which states, in pertinent part, that a court shall vacate an arbitration award if, "* * * (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

{¶11} The Ohio Supreme Court has held that

> a reviewing court is limited to determining whether the award draws its essence from the CBA and whether the award is unlawful, arbitrary, or capricious. "An arbitrator's award draws its essence from a collective bargaining agreement when there is a rational nexus between the agreement and the award * * *." *Assn. of Cleveland Fire Fighters, Local 93 of the Internatl. Assn. of Fire Fighters v. Cleveland*, 99 Ohio St.3d 476, 2003-Ohio-4278, 793 N.E.2d 484, ¶13, quoting *Mahoning Cty. Bd. of Mental Retardation & Developmental Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 488 N.E.2d 872 (1986), paragraph one of the syllabus.

{¶12} Appellate review of an arbitral proceeding is confined to an evaluation of the order issued by the trial court. *Orwell Natural Gas Co., Inc. v. PCC Airfoils, L.L.C.*, 189 Ohio App.3d 90, 2010-Ohio-3093, 937 N.E.2d 609, ¶ 8 (8th Dist.). A de novo review of the merits of the dispute is not within the contemplation of the statute. *Id.* citing *Buyer's First Realty, Inc. v. Cleveland Area Bd. of Realtors*, 139 Ohio App.3d 772, 784, 745 N.E.2d 1069 (8th Dist.2000). "[O]nce a reviewing court determines that the arbitrator's award draws its essence from the parties' contract and is not unlawful, arbitrary or capricious, the reviewing court has no authority to vacate the award pursuant to R.C. 2711.10(D)." *Marra Constructors, Inc. v. Cleveland Metroparks Sys.*, 82 Ohio App.3d 557, 563, 612 N.E.2d 806 (8th Dist.1993), citing *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.*, 49 Ohio St.3d 129, 551 N.E.2d 186 (1990).

{¶13} The record reveals that the arbitrator exceeded his express powers under

the CBA by basing his decision exclusively upon an issue not presented for arbitration as part of the grievance process, that is, the question of whether or not the forklift task constituted bargaining unit work, the overtime performance of which would trigger the County's duty to offer the work to a bargaining unit employee.

{¶14} Article 7, Section 4, Step 3 charges the arbitrator with the duty to interpret the written CBA without adding to, subtracting from or modifying the written provisions. This provision is the third and final step of the CBA's three-step procedure for resolving a grievance. The first and second steps in the CBA's grievance process require *two* separate written responses from the County in response to a grievance. Only if the grievance remains unresolved after steps one and two is the developed grievance submitted for resolution via binding arbitration. In the present instance the County admitted that it had not taken the position that the work was not bargaining unit work prior to raising the argument for the first time during the arbitration hearing. This issue was not raised during the grievance process and neither party asserted in their statement of the issue presented for arbitration that the forklift work did not qualify as bargaining unit work.

{¶15} We cannot say that the arbitrator's award draws its essence from the CBA as the arbitrator failed to examine the grievance presented for arbitration. The arbitrator noted in his opinion that the matter presented issues requiring his interpretation of the CBA's provisions dealing with overtime and the limitations of the County's ability to "assist" with the performance of bargaining unit work. Rather than interpret these

provisions, the arbitrator based his award entirely upon a position that the County admitted had not been asserted during the grievance process or even in the County's statement of the issues and thus, not properly presented for arbitration. The clear terms of the CBA, requiring two separate written responses from the County at successive steps in the grievance process, well before the dispute is to be submitted to arbitration, would be rendered meaningless if one party were allowed to unilaterally broaden the scope of the arbitration and the arbitrator's interpretive jurisdiction for the first time in the middle of the arbitration hearing. This form of hide-the-ball gamesmanship has no place in the clearly defined and detailed grievance process of the parties' CBA.

{¶16} Even if we were to ignore the fact that the County had not properly asserted that the forklift work was not bargaining unit work throughout the CBA's grievance process, we would nonetheless be compelled to vacate the arbitrator's award as his decision was based solely upon impermissible past practice evidence.

{¶17} In regards to past practices, the CBA states as follows:

Article 40: Entire Agreement/Amendments * * * .

Section 2. It is the intent of the parties that the provisions of this [CBA] shall supersede all past agreements, understandings, and practices, oral or written, express or implied, between such parties and shall govern their entire relationship and shall be the sole source of any and all rights or claims which may be asserted in arbitration hereunder or otherwise. (Emphasis added.)

{¶18} In the present instance, the arbitrator's entire decision to remove the forklift task from the purview of the CBA was based solely upon conflicting past practices evidence. Although the arbitrator questioned witnesses for both parties at the

arbitration hearing, no effort was made by the arbitrator to examine job descriptions or tasks normally performed by bargaining unit employees during the pendency of the present CBA and properly classify the forklift work within that context. Instead, the arbitrator based his decision entirely upon evidence excluded by Article 40, Section 2 of the CBA. By relying solely upon such evidence the arbitrator exceeded his authority. *Burkart Randall v. Lodge No. 1076, Internatl. Assn. of Machinists & Aerospace Workers*, *AFL-CIO*, 648 F.2d 462, 467 (7th Cir. 1981).

{¶19} Even if the CBA did provide for the arbitrator to examine past practices under the present circumstances, the evidence presented by the parties failed to satisfy the Ohio Supreme Court's three-part test for past practices to be binding upon parties. In *Assn. of Cleveland Fire Fighters, Local 93 of the Internatl. Assn. of Fire Fighters v. Cleveland*, 99 Ohio St.3d 476, 2003-Ohio-4278, 793 N.E.2d 484, the Ohio Supreme Court held that "[t]o be binding on parties to a collective bargaining agreement, a past practice must be (1) unequivocal, (2) clearly enunciated, and (3) followed for a reasonable period of time as a fixed and established practice accepted by both parties." *Id.* at syllabus.

{¶20} This court applied the binding past practice test in *Cleveland v. Cleveland Police Patrolmen's Assn.*, 8th Dist. No. 91486, 2009-Ohio-1087. The CBA in that case provided for overtime for SWAT team call-ins without providing any exception for the overtime not to be paid for call-ins that are cancelled. We rejected the city of Cleveland's argument that a binding past practice existed in favor of not paying overtime

for cancelled calls because the conflicting evidence offered by the parties failed to satisfy the binding past practice test.

{¶21} Although citing no authority directly on point, appellant essentially argues that because its members changed union representation, any past practices between the bargaining unit and the County cannot be binding because the identity of one of the parties has changed. We need not examine that issue at present because it is readily apparent from the testimony presented at the arbitration hearing that no past practice existed that would satisfy the above standard in this case. Because the arbitrator's entire decision to remove forklift work from the CBA was based upon his view of what "seems most likely" to have been the past practice, we cannot say that the arbitrator's award draws its essence from the CBA or that a rational nexus exists between the CBA and the award.

{¶22} Accordingly, we find that the arbitrator exceeded his power when he denied the appellant's grievance. By basing his decision upon an issue not presented for arbitration through the grievance process and relying solely upon past practice evidence in so ruling, the arbitrator, as he himself acknowledged, left unresolved significant issues of interpretation regarding the CBA's boundaries between overtime and a County supervisor's ability to "assist" in performing bargaining unit work.

{¶23} For the foregoing reasons, the judgment entered in the Cuyahoga County Court of Common Pleas overruling appellant's motion to vacate the arbitrator's award is hereby reversed and we remand this cause to that court for further proceedings consistent

with this opinion and R.C. 2711.10.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

JAMES J. SWEENEY, P.J., CONCURS;
COLLEEN CONWAY COONEY, J., DISSENTS
WITH SEPARATE OPINION


COLLEEN CONWAY COONEY, J., DISSENTING:

**{¶24}** I respectfully dissent. The majority opinion constitutes a de novo review of the arbitrator's decision, contrary to our very limited review on appeal. I would affirm the common pleas court, applying the abuse-of-discretion standard of review.

**{¶25}** Arbitration awards are presumed valid, and a reviewing court may not merely substitute its judgment for that of the arbitrator. *Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn.*, 49 Ohio St.3d 129, 131, 551 N.E.2d 186 (1990).

**{¶26}** Appellate review of an arbitration proceeding is confined to an evaluation of the trial court's order. *Orwell Natural Gas Co., Inc. v. PCC Airfoils, L.L.C.*, 189 Ohio App.3d 90, 2010-Ohio-3093, 937 N.E.2d 609, ¶ 8 (8th Dist.). Despite the Teamsters'

statement to the contrary, a de novo review of the merits of the dispute is not within the contemplation of the statute. *Id.* citing *Buyer's First Realty, Inc. v. Cleveland Area Bd. of Realtors,* 139 Ohio App.3d 772, 784, 745 N.E.2d 1069 (8th Dist. 2000). "[O]nce a reviewing court determines that the arbitrator's award draws its essence from the parties' contract and is not unlawful, arbitrary or capricious, the reviewing court has no authority to vacate the award pursuant to R.C. 2711.10(D)." *Marra Constructors, Inc. v. Cleveland Metroparks Sys.*, 82 Ohio App.3d 557, 563, 612 N.E.2d 806 (8th Dist. 1993), citing *Findlay*.

## No Overtime

{¶27} The majority found that the Arbitrator exceeded his authority by considering an issue that was not submitted for review and because he considered an issue prohibited by the agreement. In support of this argument, the Teamsters cited cases where a reviewing court vacated an arbitration award because the arbitrator exceeded his authority. However, these cases differ from the instant case because the arbitrators in those cases clearly exceeded their authority, whereas the arbitrator in this case did not.

{¶28} For example, the Teamsters cited *State Farm Mut. Ins. Co. v. Blevins*, 49 Ohio St.3d 165, 167, 551 N.E.2d 955 (1990), in which an arbitrator awarded punitive damages where the arbitration agreement did not provide for punitive damages.

{¶29} The Teamsters also relied on *Fairfield v. AFSCME Ohio Council 8*, 12th Dist. No. CA2007-11-267, 2008-Ohio-3891, in which the city of Fairfield appealed a

common pleas decision, which confirmed an arbitration award in favor of defendant union. The arbitration dealt with a grievance filed by the union when the City informed the union it would not be filling two positions previously filled by bargaining unit employees. The City argued that the arbitrator did not have jurisdiction over the dispute because the grievance was untimely filed under the terms of a collective bargaining agreement ("CBA"). The arbitrator had ruled that the failure to fill the positions constituted a continuing violation of the collective bargaining agreement.

{¶30} In reversing the common pleas court decision, the appellate court found that the arbitrator ignored the plain and unambiguous language in the CBA that provided a three-day time limit for filing grievances. By extending the time limit, the court found that the arbitrator unlawfully assumed jurisdiction over the grievance and exceeded his powers under R.C. 2711.10(D).

{¶31} The Teamsters claim the arbitrator in this case disregarded Article 40, Section 2[1] of the CBA by considering the parties' history of work practices. They claim the arbitrator erroneously stated that "This provision does not prohibit a look at history to determine what is bargaining unit work, indeed Article 29, Section 1 requires it." However, the arbitrator did not base his decision on past practices, and the majority takes

---

[1]   Article 40, Section 2, states:

> It is the intent of the parties that the provisions of this Agreement shall supersede all past agreements, understandings, and practices, oral or written, express or implied, between such parties and shall govern their entire relationship and shall be the sole source of any and all rights or claims which may be asserted in the arbitration hereunder or otherwise.

this sentence out of context.  In fact, the arbitrator also stated in his decision: "I recognize that Article 40, Section 2 provides that "past agreements, understandings, and practices" are superseded.

{¶32} The arbitrator based his decision on Article 13, Section 2 of the agreement, which states: "The County shall be the sole judge of the need for overtime work.  Once management has determined the need for overtime, it shall be offered to bargaining units first."

{¶33} In his decision, the arbitrator explained:

The first sentence refers simply to "overtime work."  The parties certainly did not intend, however, that if non bargaining unit work is being performed on an overtime basis, bargaining unit employees should do it. For example, the Union could not claim that if the Airport Manager came in early to work on the budget, a bargaining unit employee should be called instead (or in addition).

{¶34} Article 29, Section 1 states:

In the interest of the efficient, safe and effective operation of the Airport, supervisors and other non-bargaining personnel may assist with performing work that is normally performed by bargaining unit employees as long as it does not result in layoffs or reduction in regular working hours of bargaining unit employees.

{¶35} Considering these provisions together, the arbitrator reasonably concluded that "unless work is bargaining unit work, the Union has no claim to it, on either an overtime or straight time basis."  In determining whether the particular work of

obtaining or operating a forklift is bargaining unit work, the arbitrator considered the definition of "bargaining unit work" provided in Article 29, Section 1, which defines it as "work that is normally performed by bargaining unit employees." But because the contract was less than three weeks old when the alleged grievance occurred, the arbitrator was forced to consider past practices for the limited purpose of obtaining a definition of "bargaining unit work."

{¶36} Based on the evidence presented, the arbitrator concluded that the task of fetching and operating the forklift was not bargaining unit work because it was only done a few times each year and, according to management witnesses, half the time or more, Supervisor Guido did it. Union witness Frank conceded that although he had not seen Guido operating the forklift, he had hearsay information that Guido did so. The arbitrator concluded that "the operation of the forklift was not the exclusive province of either Management or the bargaining unit, but was done in the manner most convenient at the time." Therefore, the arbitrator concluded that because the work of operating the forklift did not "belong" to the bargaining unit, the County did not violate the CBA when a member of management performed this work.

{¶37} Unlike the cases cited by the Teamsters, there is no evidence that the arbitrator exceeded his authority in reaching his conclusion. He considered and applied the applicable provisions from the CBA. Therefore, I would affirm the common pleas court.